387 So.2d 1165 (1980)
STATE of Louisiana
v.
Richard Michael DOWLING.
No. 66364.
Supreme Court of Louisiana.
September 3, 1980.
Dissenting Opinion September 24, 1980.
Rehearing Denied October 6, 1980.
*1166 Henry C. Walker, Shreveport, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Henry N. Brown, Jr., Dist. Atty., James M. Johnson, Asst. Dist. Atty., for plaintiff-appellee.
BLANCHE, Justice.[*]
Defendant, Richard Michael Dowling, was indicted by a grand jury on charges that he "Did knowingly and intentionally produce a Schedule I Controlled Dangerous Substance, namely marijuana (R.S. 40:964(C)(10), Schedule I), contrary to L.R.S. 40:966(A)(1)." A jury tried and convicted Dowling of this offense. The trial judge sentenced him to three years imprisonment at hard labor, suspended the sentence and placed defendant on probation for the three-year period. The court further ordered that he exercise an option of either serving one year in prison or paying a fine of $5,000. On appeal, defendant raises three assignments of error, contending that: (1) his indictment was invalid; (2) the trial court erred in denying his motion to suppress; and (3) the sentence for his offense *1167 was improperly imposed and is excessive.
The record from the trial court reflects the following series of events which led to defendant's arrest and conviction for the above offense. On November 6, 1978, sometime after 11:00 p. m., defendant telephoned either the operator or the Minden City Police (there is conflicting testimony on this point) requesting an ambulance and reporting that a shooting had occurred at his residence in Minden, Louisiana. The police dispatcher relayed this information to the two City Police officers on duty that night, and the officers proceeded to defendant's residence. Defendant's wife testified that prior to the arrival of the police, and after her husband telephoned for aid, she phoned the Minden Police and asked that they "please, please get somebody over here fast and call an ambulance, too."
When the two officers reached the Dowling residence they found Mrs. Dowling standing in the driveway near the road. She told them that her husband had shot a man in their house, told them to go into the house, and described to one of the policemen where the bedroom was where the shooting had occurred, and where the victim lay. Defendant was standing at the rear entrance to the home when the officer entered there to locate the reported shooting victim. Defendant made no move to stop this policeman from entering his home, nor did he request, at this point in time or later, that the law enforcement officials in any way limit their survey of his home and their investigation of the shooting he and his wife had reported. One of the policemen arrested defendant and took him to police headquarters after the other had located the victim in the room indicated by defendant's wife, and had pronounced him dead.
At this point, the Minden City Policemen called the Webster Parish Sheriff's Department for aid in the investigation of the shooting. The chief investigator for the Sheriff's Department began reconstructing the events surrounding the shooting incident when he arrived at the scene. He concluded that two guns may have been fired that night at the Dowling residence-a gun found next to the victim's body and one belonging to the defendant and which defendant's wife turned over to the investigator in the course of the investigation.
He then searched for bullets and found several markings he thought to be bullet holes, including one (later determined to be a ricochet mark from a bullet) in the ceiling of the living room which adjoins the bedroom where the shooting occurred. After this discovery the investigator ordered a deputy to go up into the attic of the home and look to see whether a bullet at this location, or any other, had gone through the ceiling and into the attic. (The deputy testified that a bullet hole might be located by tracing light shining into a dark attic from below).
This deputy entered the attic by means of a pulldown stepladder type device, and began working his way, with a flashlight toward the area in the attic above the living room ceiling. While looking for bullet holes and bullets, the deputy encountered a hood hanging by ropes from the ceiling of the attic, with ultraviolet "grow lights" under it, and with an automatic timing device attached. Beneath the hood and lights were a number of pots, each containing several small plants. The deputy testified that he suspected, from the appearance of the plants (which other testimony indicates then averaged four to five inches in height) that they were marijuana plants.
He located the hood, lights, timing device and plants in the attic directly above the living room ceiling where the chief investigator initially suspected a bullet had entered the ceiling. After completing his search for bullet holes and bullets, he returned from the attic and told the chief investigator he had found marijuana growing in the attic. The chief investigator, another sheriff's deputy and two city policemen then went up into the attic and indicated that they, too, believed the plants were marijuana, and the plants were ordered seized. It was later determined that there were twelve pots containing ninety-eight plants, which chemical tests confirmed *1168 were marijuana plants, in the Dowling attic.
Subsequent to the above events, defendant was not prosecuted for any offense arising out of the shooting that occurred on November 6, 1978. A grand jury returned a "no true bill" in that matter. Defendant raises the following assignments of error in connection with the Production of Marijuana charge and conviction.

Assignment of Error Number 1
In defendant's first assignment of error, he contends that the trial court erred in failing to sustain his motion in arrest of judgment wherein defendant alleged that his indictment for this offense contained an error of substance and was invalid. As indicated in the language quoted at the outset of this opinion, the indictment charges that defendant produced a Schedule I Controlled Dangerous Substance. The indictment is erroneous in that marijuana had been reclassified by the legislature as a Schedule II substance at the time of defendant's arrest. Therefore, the indictment should have charged defendant with a violation of R.S. 40:967(A)(1), the statute dealing with production of Schedule II drugs, rather than R.S. 40:966(A)(1), which proscribes production of Schedule I drugs.
Notwithstanding this technical error, the indictment adequately informed defendant of the nature of the charges against him (producing a controlled dangerous substance, namely, marijuana), and defendant was not prejudiced by the defect. Furthermore, in answer to defendant's request, the state furnished him a Bill of Particulars prior to trial which, in summary, charges that defendant produced marijuana in twelve pots located beneath an ultraviolet light equipped with a timing device and located in the attic of his home at 809 Center Street in Minden, Louisiana. A technical insufficiency in an indictment may not be raised for the first time after conviction where the indictment fairly informs the accused of the charge against him and the defect does not prejudice him. State v. Turner, 337 So.2d 1090 (La.1976); State v. Anderson, 332 So.2d 452 (La.1976); State v. Murray, 357 So.2d 1121 (La.1978). We affirm the trial court's denial of defendant's motion in arrest of judgment.

Assignment of Error Number 2
In his second assignment of error, defendant disputes the trial court's denial of defendant's motion to suppress. The trial court ruled, in a written per curiam opinion, that the warrantless search and seizure was justified and evidence found pursuant to the search admissible. The trial judge reasoned that the evidence sought to be suppressed was in "plain view", and was found while the deputy was making a search incident to a lawful arrest in the course of a homicide investigation and was, therefore, in a place where he had a right to be.
We find that this warrantless search and seizure was justified on other grounds. It is a very well established rule that a search conducted without a valid warrant is per se unreasonable, and that there are only a few specifically established and well delineated exceptions to this rule. Katz v. United States, 389 U.S. 347, 88 S.Ct. 407, 19 L.Ed.2d 576 (1967); State v. Guzman, 362 So.2d 744 (La.1978). Consent to search the thing or premises in question is one of these specifically established and well delineated exceptions, Davis v. United States, 328 U.S. 582, 66 S.Ct. 1256, 90 L.Ed. 1453 (1946); State v. Jolla, 384 So.2d 370 (La.1980) and we find this exception to the warrant requirement applicable in this case.
The defendant himself telephoned either the operator or the City Police to report that a shooting had occurred in his home and to request medical aid for the victim. He watched silently as the police walked by him and into his home when they arrived at the scene. Defendant's wife testified that she phoned the police before they arrived in response to the defendant's call, asking that they "please get somebody over here fast." She met the police outside her home and stated that her husband had shot a man in the house, directed them into the house, and gave them directions to the room where the shooting occurred and where the victim was to be found. At some point in the investigation which immediately followed, *1169 defendant's wife gave defendant's gun to the Sheriff's Department investigators.
We find that under the facts of this case, the defendant and his wife gave their consent to law enforcement officials to search their home in their investigation of the November 6, 1978 shooting incident that occurred there. It is apparent that the Dowlings requested the presence of the police at their home and wanted them to investigate the facts surrounding the fatal shooting of someone in their home. Mr. Dowling did not retract or limit his consent to investigate when the police arrived, nor did Mrs. Dowling, who, in fact, affirmatively aided the officers in their investigation. Even had defendant not given his consent to the investigatory search, the consent of his wife is a valid authorization to search under these facts. United States v. Matlock, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974); State v. Dupuy, 319 So.2d 299 (La.1975).
In the course of the investigation, a sheriff's deputy discovered what he believed to be marijuana plants growing in the attic. The deputy was legitimately in the attic in search of bullet holes and bullets, a search properly within the scope of an investigation of a shooting. The "plain view exception" (it is reasoned that there is no search where this exception is applicable) allows evidence found and seized without a warrant to be used against defendant where: (1) there is a prior justification for police intrusion into a protected area; (2) the evidence is discovered inadvertently; (3) it is immediately apparent without close inspection that the items are evidence or contraband. Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); State v. Fearn, 345 So.2d 468 (La. 1977). We find the plain view exception applicable under the facts of this case.
The prior justification for the police intrusion into the attic was the consent of defendant and his wife to investigate the shooting they reported. The evidence was inadvertently discovered when the deputy approached the area in the attic above the ceiling where a bullet hole was thought to be. It was immediately apparent to the investigating deputy that the ninety-eight plants averaging four to five inches in height, growing in twelve pots beneath a grow light with an automatic timer, were contraband (marijuana).
The deputy testified that he had been working for the Sheriff's Department for six years, had seen "a lot of marijuana", and from the appearance of these plants, believed them to be marijuana. Four other law enforcement officials on the scene expressed like beliefs before the plants were seized. It was sufficiently "immediately apparent" that the plants were marijuana, although there was no chemical confirmation until later. A police officer should not be required to get a search warrant or to perform chemical testing at the site where the contraband is found before seizing what is "immediately, apparently" contraband properly in plain view.
For the above reasons, the search of defendant's home and the seizure of the marijuana plants did not infringe upon defendant's constitutional rights to be free from unreasonable searches and seizures. The search of the house and seizure of the contraband was justified and we affirm the trial court's denial of defendant's motion to suppress.

Assignment of Error Number 3
In his last assignment of error, defendant contests the trial court's application of the Production of Marijuana sentence to him. He urges that the legislature intended only to punish drug dealers in R.S. 40:967(A)(1), and that he was not, and was not proven to be, selling the marijuana he grew in his home. Defendant proposes that the Possession of Marijuana penalty is more appropriate to his offense. We find no distinction between producer/dealers and producer/non-dealers in the clear wording of the statute and will not read into what wording such an intent. The sentence for Production of Marijuana, the offense defendant has been charged with and convicted of, was properly applied to him.
Defendant also contends that the sentence imposed by the trial court is excessive.
*1170 The possible sentence for a conviction for Production of Marijuana is imprisonment at hard labor for not greater than ten years and, additionally, a possible fine of not greater than $15,000. Defendant was actually sentenced to a three-year suspended prison sentence and placed on probation for the three-year period. He was further fined $5,000 and given the option of serving a one-year prison term in lieu of payment of this fine.
The trial judge properly considered the sentencing guidelines mandated by C.Cr.P. art. 894.1. In considering two of these guidelines, the trial judge specifically stated that he gave the defendant the benefit of the doubt as to whether he would respond to probation and that the most important consideration in this case was the excessive hardship imprisonment would entail to himself, his dependents and his employees. In light of these factors, the judge suspended the prison sentence, but imposed the $5,000 fine or one year additional prison term. He stated that he did so because he felt that due to the seriousness of the offense, the defendant should pay a substantial fine or serve a prison term. We note that the sentence and fine imposed by the trial judge is far below the maximum for this offense, and find that under the circumstances of this case the sentence is not excessive.
For these reasons, the conviction and sentence of defendant are affirmed.
AFFIRMED.
DENNIS, J., dissents with reasons.
DENNIS, Justice, dissenting.
I respectfully dissent.
Under the circumstances of this case, Mary Dowling's action in admitting the police to her home constituted consent for the police to enter the house to conduct a prompt and diligent investigation of the shooting incident. While an investigation may be instituted and a valid search and seizure may be made without a warrant where an individual consents, a consent search is reasonable only if kept within the bounds of the actual consent. See United States v. Dichiarinte, 445 F.2d 126 (7th Cir. 1971). "A defendant's consent may limit the extent or scope of a warrantless search in the same way that the specification of a warrant limit a search pursuant to that warrant." United States v. Dichiarinte, supra; LaFave, Search and Seizure: A Treatise on the Fourth Amendment, § 8.1, 627 (1978). See also State v. Koucoules, Me., 343 A.2d 860 (1978); People v. Superior Court of Los Angeles, 10 Cal.App.2d 122, 89 Cal.Rptr. 316 (1970).
Under the present facts, Mary Dowling's consent should be construed as being limited to a search of only those parts of the house which were necessary to the investigation of the killing. The police, under these facts, had the right to enter the attic based upon the need to determine whether a bullet fired during the shooting incident had entered the attic.
Although the officer had the right to enter the attic, the seizure of the marijuana plants was invalid because the conditions necessary for the applicability of the "plain view" doctrine were not present. The following conditions are necessary for the applicability of the "plain view" doctrine: (1) there must be a prior justification for an intrusion into a protected area, (2) in the course of which evidence is inadvertently discovered, and (3) where it is immediately apparent without close inspection that the items are evidence or contraband. State v. Banks, 363 So.2d 491 (La.1978); State v. Parker, 355 So.2d 900 (La.1978). Despite the officer's right to enter the attic in search of bullets, he did not inadvertently discover the plants and it was not immediately apparent to him, without close inspection, that there was evidence or contraband under the hood. The only possible justification for the officer's warrantless entry into the attic was to determine whether a mark on the bedroom ceiling was a bullet hole leading into the attic. The evidence reflects that, in fact, no bullets pierced the bedroom ceiling and that the mark was left by a bullet's ricochet. The testimony and photograph in evidence further convince me that the officer should have determined that no bullet entered the attic at the site of the ricochet mark and concluded his *1171 search without searching the entire attic or closely inspecting the potted sprouts with his flashlight. The consent to conduct a warrantless search of the premises in connection with the homicide investigation did not extend beyond a reasonable inspection of the attic related to the single possible bullet hole.
NOTES
[*] Honorable Richard H. Gautheir participated in this decision as Associate Justice Ad Hoc.