448 So.2d 666 (1984)
STATE of Louisiana
v.
Lillian THOMPSON.
No. 82-KK-2859.
Supreme Court of Louisiana.
February 27, 1984.
Rehearing Denied March 23, 1984.
*668 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., John Mamoulides, Dist. Atty., William C. Credo, III, Andrea M. Price, Asst. Dist. Attys., for relator.
Clifford E. Cardone, New Orleans, for respondents.
BLANCHE, Justice.
This is a search and seizure case. We granted the state's writ application to consider whether the trial judge properly suppressed evidence discovered by police officers during their investigation at a murder scene.
On May 18, 1982, several deputies from the Jefferson Parish Sheriff's Department arrived at defendant's home in response to a report by the defendant's daughter of a homicide. The deputies entered the house, made a cursory search and discovered defendant's husband dead of a gunshot wound in a bedroom and the defendant lying unconscious in another bedroom due to an apparent drug overdose. According to the defendant's daughter, the defendant had shot her husband, then ingested a quantity of pills in a suicide attempt, and then, changing her mind, called her daughter, informed her of the situation and requested help. The daughter then contacted the police. Upon their arrival, the daughter admitted them into the house and directed them to the rooms containing the defendant and the victim. The deputies immediately transported the then unconscious defendant to a hospital and secured the scene. Thirty-five minutes later two members of the homicide unit of the Jefferson Parish Sheriff's Office arrived and conducted a follow-up investigation of the homicide and attempted suicide.
The homicide investigators entered the residence and commenced what they described at the motion to suppress hearing as a "general exploratory search for evidence of a crime." During their search, which lasted approximately two hours, the detectives examined each room of the house. In the room where the victim was found, the investigators discovered a .25 caliber pistol inside a chest of drawers. During their search of an adjacent bathroom, a torn up note was found in the wastepaper basket. Another letter, an alleged suicide letter, was discovered in the bedroom from which defendant had been removed. The investigating officer entered the room and noticed a red Christmas card lying on top of a chest of drawers. Considering a Christmas card lying in the open during the month of May to be suspicious, the officer opened the card and discovered four folded sheets of paper upon which the alleged suicide message was written.
Following the defendant's indictment for the second degree murder of her husband, she moved to suppress the evidence discovered by the homicide detectives. The investigating officers testified at the motion to suppress hearing that they had had time to secure a warrant prior to commencing their search, but did not. The detectives further testified that the deputies had searched for victims and suspects prior to their arrival and that theirs was a deliberate search for evidence. Upon hearing the evidence, the trial court initially denied defendant's pretrial motion. Subsequently, defendant requested a reconsideration by the trial court in light of several decisions by this court and by the United States Supreme Court. The trial court granted her motion for reconsideration and partially reversed its original decision by suppressing two pieces of evidence, the gun and the suicide letter found in the Christmas card. The Court of Appeal denied the state's application for a writ of review.
We granted the state's application for writs to determine two questions:
(1) Whether the trial court had the authority to reconsider its earlier denial of the motion to suppress; and, if so,
(2) Whether the trial court properly suppressed the evidence seized by the officers as fruits of an illegal search.

*669 1.
Initially, the state contends that the trial court erred when it reconsidered the original denial of the defendant's motion to suppress.
Ordinarily, if the ruling on a motion to suppress is adverse to the defendant, he can reserve a bill of exceptions for use in a regular appeal of the case. See La.C.Cr.P. art. 703, Comment (f). However, nothing in the Code of Criminal Procedure prohibits the action taken in the present case.
In Louisiana, a ruling on a motion to suppress prior to trial is binding at the trial. La.C.Cr.P. art. 703 F. However, the implication of this limitation is that a ruling on a motion to suppress is not binding until trial begins.
Out of a concern for the expeditious treatment of a motion to suppress and because of other fairness and policy considerations, we have limited the "not binding before trial" implication of the Code. In State v. Landry, 339 So.2d 8 (La.1976), we held that the State may not seek a rehearing of the grant of a motion to suppress in order to put on new evidence to support the constitutionality of a search. Landry suggests further that a defendant may not seek a rehearing to introduce new evidence once a trial court denies his motion to suppress.
In the present case, however, the defendant did not seek to introduce additional evidence upon rehearing. Instead, he sought reargument and reconsideration of his motion based upon the evidence previously introduced. Thus, the concerns for time-consumption and the implications of possible unfairness addressed in Landry are not present in the instant case. The reconsideration by the trial judge of the applicable jurisprudence produced no delay in these proceedings. Although such reconsiderations should be sparingly made and limited to instances when the trial judge firmly believes that his prior decision was legally infirm, such reconsiderations do not hamper, but actually promote, judicial efficiency.
Therefore, we conclude that the trial court did not abuse its discretion in reconsidering, for reargument without additional evidence, its earlier denial of the defendant's motion to suppress.

2.
The second issue in this case is whether the warrantless search of the murder victim's residence was reasonable under the federal and state constitutional restrictions governing searches and seizures.
In order to decide whether this evidence must be suppressed, we must examine the purpose behind the Fourth Amendment protection and the reasons behind its creation. From such an examination, we can determine whether, in light of these purposes and reasons, the search conducted by the police in this case was "unreasonable".
The United States and Louisiana Constitutions expressly proscribe all "unreasonable searches and seizures." U.S. Const. amend. IV, XIV; La. Const. art. I, § 5. Specifically, the Fourth Amendment to the United States Constitution assures the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." The Amendment was primarily a reaction to the evils associated with the use of the general warrant in England and the writs of assistance in the Colonies,[1] and was intended to protect the "sanctity of a man's home and the privacies of life" from searches under unchecked general authority. Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886). Thus, the purpose of the Amendment was to protect a citizen against unbridled and unjustified governmental invasions of the citizen's privacy interests, specifically his own person, house, papers or effects.
*670 The United States Supreme Court has expressed time and time again that the mandate of the Fourth Amendment, made applicable to the many states through the Fourteenth Amendment, requires adherence to judicial process and "that searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendmentsubject only to a few specifically established and well delineated exceptions." Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) (Footnotes omitted); see also Mincey v. Arizona, 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978); United States v. Matlock, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974); Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); Camera v. Municipal Court, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967); State v. White, 399 So.2d 172 (La.1981); State v. Dowling, 387 So.2d 1165 (La.1980). This "per se" rule has been recently reaffirmed by the United States Supreme Court in Mincey v. Arizona, supra, and United States v. Ross, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982). Yet the Court has never applied this rule automatically without an examination of the factual circumstances surrounding the search. The Court has consistently recognized that:
[T]he constitutionality of a particular search is a question of reasonableness and depends on "a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers." Mincey v. Arizona, 437 U.S. at 406 [98 S.Ct. at 2420-21] (Rehnquist, J., concurring), quoting United States v. Brignoni-Ponce, 422 U.S. 873, 878 [95 S.Ct. 2574, 2579, 45 L.Ed.2d 607] (1975).
The "public interest" involves the societal costs incurred due to the exclusion of evidence seized in violation of the Fourth Amendment. Such evidence usually forms the basis of the case against the accused because it is factual, tangible evidence of the most reliable nature. Its exclusion results in a harm to society by interfering with the truthseeking function of a criminal trial. Society must absorb the cost of the exclusion's resultthat a violent criminal is returned to freedom within society. Thus, there is a public interest in bringing the criminal element of our society to justice.
The intrusion into the "sanctity of a man's home and the privacies of life", Boyd v. United States, supra, must be balanced with the public interest in bringing criminals to justice and with the societal costs involved in releasing a criminal back into society in determining whether a search is "unreasonable". This balancing must be made by an examination of the totality of the circumstances surrounding the alleged illegal search to determine whether that search was "unreasonable" under the Fourth Amendment. cf. United States v. Brignoni-Ponce, supra; Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); Camera v. Municipal Court, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967). Common sense dictates that reasonableness varies with the circumstances of the search. Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964). Whether a particular search is unreasonable is something to be determined by the facts of a given case. Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966); see also Justice Black's dissent in Vale v. Louisiana, 399 U.S. 30, 36, 90 S.Ct. 1969, 1973, 26 L.Ed.2d 409 (1970).
Defendant contends that Mincey v. Arizona, 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978), dictates that evidence seized during a warrantless search of a murder scene must be suppressed as the fruit of an illegal search. We find Mincey distinguishable from the facts of this case. In Mincey, an undercover policeman was shot and killed during a drug raid on the defendant's apartment. The police secured the scene and then conducted an intense investigation of the scene without a warrant. The search lasted four days during which two to three hundred objects were examined, inventoried, and seized. The *671 United States Supreme Court found that this extensive warrantless search was not justified under any exception to the warrant requirement, and as such, was unreasonable and illegal. The Court expressly found that the Arizona Supreme Court's "murder scene" exception was inconsistent with the Fourth and Fourteenth Amendments because it left too much discretion with the police in determining the reasonableness of the search.
The Mincey case, however, involved a victim killed on another's property. The policeman killed had no privacy interest in the apartment that was searched. In the case before us, the victim was killed in his own home. While the policeman shot in Mincey could not have consented to the search of the apartment he was shot in, as he had no authority over that apartment, Mr. Thompson had authority over the premises wherein he was killed and, had he survived until the police arrived, could have consented to their search even over the protests of the defendant. United States v. Matlock, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974); State v. Dowling, supra; State v. Dupuy, 319 So.2d 299 (La. 1975). Additionally, the two hour, same day search conducted at the Thompson residence was far less aggravated than the four day intensive investigation that was the subject of the Mincey opinion. For these reasons, we find the instant case distinguishable from Mincey.
Additional facts in this case evidence a diminished privacy expectation by the defendant. The defendant herself telephoned her daughter, informed her of the situation and requested assistance. The daughter then called the police, met them at the defendant's residence, and let them in. The defendant was found in an unconscious state. The police were faced with a situation where both parties with authority over the premises were either dead or unconscious and in an apparently grave condition. A third party, defendant's daughter, portraying an apparent authority over the premises through the defendant's request for assistance, met and admitted the police to the premises. Thus, the defendant's privacy interests under these facts are greatly diminished from those of the defendant in Mincey.
The need for Fourth Amendment protection is lessened as the privacy interest in an area is diminished. The reasons for preserving the sanctity of the home and the privacies of life find less support when the citizen claiming the right has exhibited a diminution of their privacy interest. At the same time, the public interest remains the same. In balancing this minor intrusion into the defendant's diminished privacy interests against the public interests, we come to the conclusion that the same day investigation conducted by the police was not unreasonable under the Fourth Amendment. We find that the intrusion by the police in conducting a two hour search, during which the .25 caliber handgun and the four page suicide letter were seized, when examined under the totality of the circumstances, was not so pervasive as to constitute an "unreasonable" search under the Fourth Amendment to the United States Constitution. Any privacy interest held by the victim passed with his death. The victim has no privacy interests to protect. The defendant, who shared a privacy interest in the premises with the victim, exhibited a voluntary diminution in her privacy interest when she herself summoned help. Under these facts, the search conducted by the police in this case was reasonable.
For these reasons, we find the seizures made by the police under these facts were reasonable. As such, the defendant's motion to suppress any evidence gained through such a search should have been overruled.

DECREE
For the reasons stated, the ruling of the trial court is reversed and the case is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
*672 CALOGERO, J., concurs and assigns reasons.
LEMMON, J., subscribes to the opinion and assigns additional reasons.
DIXON, C.J., and DENNIS, J., dissent with reasons.
CALOGERO, Justice, concurring.
The United States and Louisiana Constitutions proscribe all unreasonable searches and seizures. U.S. Const. amend. XIV; La. Const.1974 Art. I, Sec. 5. The search in this case by police officers called to the scene and admitted to the premises by the daughter of a couple, one dead, and the other unconscious, was not unreasonable.
LEMMON, Justice, subscribing to the majority opinion and assigning additional concurring reasons.
Although I fully subscribe to the majority opinion, I add these additional reasons why it would be unreasonable for this court to hold that the search was "unreasonable" under either La. Const., Art. I § 5 (1974) or the Fourth Amendment.[1]
The Mincey decision, as is well illustrated in the majority opinion, is not controlling.[2] There is a clear basis for distinguishing the relatively brief search of the murder victim's own home from an extended four-day search of premises occupied by someone other than the murder victim. When a resident of the premises is murdered, there is a significant diminishing of the expectations of privacy of the other persons residing there.[3] And when the police are called to the premises, are admitted inside by someone with apparent authority to do so, and are furnished reliable information establishing probable cause to believe that there may be physical evidence on the premises which might reveal (or confirm) the circumstances of the killing and the identity of the killer, then a prompt contemporaneous search is clearly justified.
Moreover, the police in this case were faced with the possibility that evidence might be destroyed. Under those circumstances, it would have been reasonable to secure the home (even against other occupants) during the time necessary to secure a search warrant. An equally reasonable means of preserving evidence was to conduct an immediate search based on probable cause, which should not be considered a "greater intrusion" necessitating prior judicial approval. See Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), in which the Court stated with regard to an automobile search:
"Arguably, because of the preference for a magistrate's judgment, only the immobilization of the car should be permitted until a search warrant is obtained; arguably, only the `lesser' intrusion is permissible until the magistrate authorizes the `greater.' But which is the `greater' and which the `lesser' intrusion is itself a debatable question and the answer may depend on a variety of circumstances. For constitutional purposes, we see no difference between on *673 the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment." (Emphasis supplied.)
See also Robbins v. California, 453 U.S. 420, 101 S.Ct. 2841, 69 L.Ed.2d 744 (1981) overruled by United States v. Ross, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982).
DIXON, Chief Justice (dissenting).
I respectfully dissent.
All it would take to make this search legal is a warrant.
DENNIS, Justice, dissenting.
I respectfully dissent.
The major issue presented by this case is whether the warrantless search of the defendant's residence for evidence violated the state and federal prohibitions against unreasonable searches and seizures.
The United States and Louisiana Constitutions expressly proscribe all "unreasonable searches and seizures." U.S. Const. amend. XIV; La. Const.1974, art. I, § 5. It is a cardinal principle of constitutional law that searches conducted outside the judicial process, without prior approval by a judge or magistrate, are per se unreasonable subject only to a few specifically established and well-delineated exceptions. Mincey v. Arizona, 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978); Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1968); Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); Camara v. Municipal Court, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967); State v. Ludwig, 423 So.2d 1073 (La.1982); State v. White, 399 So.2d 172 (La.1981). Once the defendant makes the initial showing at a motion to suppress hearing that a warrantless search occurred, the burden of proof shifts to the state to affirmatively show that the search is justified under one of the narrow exceptions to the rule requiring a search warrant. State v. Franklin, 353 So.2d 1315 (La.1977); La.C.Cr.P. art. 703 D; See also, Lafave, Search and SeizureA Treatise on the Fourth Amendment, § 6.6 (1978). Counsel for the State asserts that this affirmative showing was made, arguing that the report of a homicide justified the officers' warrantless entry into defendant's home and that the Christmas card and suicide note which were "in plain view" were properly seized.
The United States Supreme Court in Mincey v. Arizona, 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978), held that a "murder scene exception" to the warrant requirement created by the Arizona Supreme Court is inconsistent with the Fourth and Fourteenth Amendments, and restated the rules governing the search of a person's home. Warrants are generally required to search a person's home or his person unless the exigencies of the situation make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment. Mincey v. Arizona, supra, at 394, 98 S.Ct. at 2414, 57 L.Ed.2d at 301; McDonald v. United States, 335 U.S. 451, 456, 69 S.Ct. 191, 193, 93 L.Ed. 153, 158 (1948). For example, the Fourth Amendment does not bar police officers from making warrantless entries and searches when they reasonably believe that a person within is in need of immediate aid. Similarly, when the police come upon the scene of a homicide they may make a prompt, warrantless search of the area to see if there are other victims or if a killer is still on the premises. Mincey v. Arizona, supra, 473 U.S. at 392, 98 S.Ct. at 2413, 57 L.Ed.2d at 300. Cf. Michigan v. Tyler, 436 U.S. 499, 509-10, 98 S.Ct. 1942, 1949-50, 56 L.Ed.2d 486, 498-99 (1978). A warrantless search must, however, be "strictly circumscribed by the exigencies which justify its initiation." Mincey v. Arizona, supra, 437 U.S. at 393, 98 S.Ct. 2413, 57 L.Ed.2d at 300, citing Terry v. Ohio, 392 U.S. 1, 25-26, 88 S.Ct. 1868, 1882, 20 L.Ed.2d 889, 908 (1968). See also Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969) (search of arrested suspect and area within *674 his control for weapons or evidence); Warden v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967) ("hot pursuit" of fleeing suspect); Schmerber v. California, 384 U.S. 757, 775, 86 S.Ct. 1826, 1838, 16 L.Ed.2d 908 (1966) (imminent destruction of evidence). In sum, when an exigent circumstance, such as a report of a homicide, is used as the reason for operating in an otherwise illegal manner, the search must be limited to the parameters of the exigency itself. Satchell v. Cardwell, 653 F.2d 408 (9th Cir.1981).
Applying these precepts, it is clear that the trial judge correctly suppressed the gun and the suicide note as products of an unlawful warrantless search.
The deputies first summoned to the murder scene were entitled to make, and did make, a prompt warrantless search of the premises to see if there were other victims or persons in need of immediate aid or if a killer was still on the premises. Their search was strictly confined to these purposes.
The search conducted by the homicide detectives which resulted in uncovering the gun and suicide note, however, was not a response to an emergency situation because the detectives could not have reasonably believed that there was anyone within the house who was a victim, culprit or a person in need of aid. As the detectives were aware, before they began their search, their fellow officers had surveyed the premises for other persons, removed the occupants and secured the house against intruders. The detectives frankly testified that they had ample time to obtain a warrant, but chose not to do so, and that the suicide note was discovered during a systematic search for evidence.
The state strenuously argues, however, that the alleged suicide note was properly seized as it was in plain view during the course of the legitimate emergency activities. Michigan v. Tyler, supra, 436 U.S. at 509-10, 98 S.Ct. at 1950, 56 L.Ed.2d at 498; Coolidge v. New Hampshire, 403 U.S. 443, 465-66, 91 S.Ct. 2022, 2037-38, 29 L.Ed.2d 564, 582-83 (1971).
The seizure fulfilled none of the requisites of the plain view rule, however. The conditions necessary for the discovery of evidence in "plain view" and subject to seizure are: (1) there must be a prior justification for the officer's intrusion into a protected area, (2) in the course of which evidence is discovered inadvertently, and (3) where it is immediately without close inspection that the items are evidence or contraband. Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); State v. Fearn, 345 So.2d 468 (La. 1977); See also, State v. Meichel, 290 So.2d 878 (La.1974). In the instant case, none of the conditions essential to a plain view seizure were met. As we noted earlier, the homicide detectives' intrusion into the defendant's home was not justified because the limited search for casualties, captives, victims or culprits necessitated by the exigency had been fully performed by other officers and the detectives admitted that their intrusion was purely a search for evidence under non-exigent circumstances. The note was not discovered inadvertently, but was found during this intentional detailed search for evidence. It was not immediately apparent that a note was inside the closed card, and it was certainly not apparent that the closed card contained evidence of the homicide. Accordingly, the seizure of the note cannot be sustained by the plain view exception to the warrant requirement.
Therefore, it is clear that the detectives did not respond to an emergency situation but engaged in a deliberate warrantless search for evidence which is proscribed by the Fourth Amendment. The initial entry by the other officers was unquestionably a lawful response to an emergency situation. But, the general warrantless search by the two homicide detectives who arrived at the murder scene after the victim had been discovered, the defendant had been taken to the hospital, a search for other occupants had been made, and the scene had been secured, was clearly illegal and unjustified because of the absence of any emergency or exigency. Mincey, supra, *675 437 U.S. at 393, 98 S.Ct. at 2413-2414. Further, this court should not accept, for the reasons outlined above, the State's contention that the challenged search and seizure fell within the ambit of the plain view exception to the warrant requirement.
At oral argument and in deliberations this court has considered at least two approaches toward limiting the principle of the Mincey case. First, by limiting its holding strictly to its facts; and, second, by constructing a theory of implied consent whereby it could be presumed that a victim slain in his own home has given permission for a general search in connection with the detection and apprehension of his murderer. See Lafave, supra § 6.5(e). Careful consideration of the Mincey opinion, however, convinces me that neither interpretation is warranted.
The facts of the present case are different from Mincey in that here the victim was slain in his own home and the intrusion by the homicide detectives was not as aggravated as the four day intensive search performed by the officers in Mincey. Nevertheless, the principles of the Mincey decision clearly have application beyond the particular facts of that case. The court began by reaffirming the principle stated in Katz v. U.S., supra that a search conducted without a warrant issued on probable cause is per se unreasonable subject only to a few specifically established and well delineated exceptions. The opinion flatly rejected the idea that the search of a homicide scene, without more, should be considered as a valid generic exception. Mincey, supra at 390, 391, 98 S.Ct. at 2412, 2413. In totally rejecting the Arizona murder scene exception, the high court was aware that the Arizona cases indicated that the exception had been applied in instances in which homicides had occurred at the home of the victim. Mincey, supra at 392 n. 5, 98 S.Ct. at 2413 n. 5. The Mincey opinion recognized that within the "few specifically established and well delineated exceptions" are certain emergency situations, viz., entries and searches upon reasonable belief that a person within is in need of immediate aid or a prompt warrantless search to see if there are other victims or if a killer is still on the premises. But the Court clearly indicated that such an exceptional warrantless search must be strictly circumscribed by the life or limb threatening emergency which justifies its initiation. Finally, the court rejected Arizona's argument that a murder scene exception should be permitted because the search could be confined in scope and intensity by guidelines such as those set forth by the Arizona Supreme Court. In rejecting this approach, the court noted that Arizona would confer unbridled discretion upon the individual officer to interpret such terms as "reasonable ... search" "serious personal injury with likelihood of death where there is reason to suspect foul play", and "reasonable period", and that it is precisely this kind of judgmental assessment of the reasonableness and scope of a proposed search that the Fourth Amendment requires be made by a neutral and objective magistrate, not a police officer. Mincey, supra at 396, 98 S.Ct. at 2415.
Consequently, it is clear that the high court has limited murder scene searches to those strictly necessary to deal with emergencies threatening life and limb or to apprehend a killer on the premises. Whether the victim was slain in his own home or elsewhere is not relevant. Nor is the intensity or aggravated nature of the search, if the intrusion is not authorized by an emergency situation. Therefore, since the evidence is clear that there was no emergency at the time the search complained of in the present case was conducted, the intrusion was plainly unjustified and the trial court was correct in suppressing its fruits as evidence.
NOTES
[1] See generally LaFave, Search and Seizure, a Treatise on the Fourth Amendment, § 1.1 (1978); J. Landynski, Search and Seizure and the Supreme Court (1966); N. Lasson, The History and Development of the Fourth Amendment to the United States Constitution (1937).
[1] A contrary decision could also raise an extremely disturbing prospect under the "expanded standing" rule of La. Const. Art. I, § 5 (1974), if an uninvited intruder, after murdering a homeowner, claimed that a police search (such as conducted here), was unreasonable from the standpoint of other occupants of the home and sought to have the "fruits" of the search suppressed.
[2] See the concurring opinion of Justice Rehnquist in Mincey. Similarly, the occupants of a home seriously harmed by a fire suffer significant reduction in privacy for a reasonably prompt fire marshal's investigation into the cause of the blaze. See Michigan v. Tyler, 436 U.S. 499, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978).
[3] In cases involving automobile searches, the Court has indicated a willingness to recognize the reasonableness of probable cause-based warrantless searches because of the diminished expectation of privacy. The surviving occupants of a home in which another occupant (not an intruder) has been murdered, suffer a significant diminution in their expectations of privacy in that home for a reasonably brief period during which police conduct a reasonable search (both in scope and duration) for evidence tending to identify and prove the guilt of the murderer of the resident (even if that murderer happens to be another person who may claim a reasonable expectation of privacy in those premises).