**W. Steven DOUGLAS–BEY, Appellant,**

**v.**

**UNITED STATES, Appellee.**

**No. 83–407.**

District of Columbia Court of Appeals.
Argued Oct. 18, 1984.
Decided April 16, 1985.

Blair Brown, Public Defender Service, Washington, D.C., with whom James Klein and Barbara Bergman, Public Defender Service, Washington, D.C., were on brief for appellant.

Michael W. Farrell, Asst. U.S. Atty., Washington, D.C., with whom Joseph E. diGenova, U.S. Atty., and Kenneth J. Melilli, Asst. U.S. Atty., Washington, D.C., were on brief for appellee.

Before NEBEKER, NEWMAN and FERREN, Associate Judges.

NEWMAN, Associate Judge:

Douglas-Bey contends the trial court erred in denying his motion to suppress physical evidence (and testimony relating thereto) which was seized from his apartment and that as a result, his conviction for felony murder and related offenses must be reversed. We agree and reverse.[1]

---

1. Appellant made two other claims of error, both of which we find meritless. He complains

Officer Hennessy monitored a police radio broadcast reporting a shooting at 711 Irving Street, N.E. Hennessy was quite nearby and proceeded to that location. At that address was a four unit apartment building. Hennessy entered and while in the second floor public hallway, he observed one apartment door open. While still standing in the hallway, Hennessy was able to see in this apartment a black sandal, a set of false teeth and a pool of blood. Hennessy entered the apartment to look for a victim or someone involved in the shooting. He limited his search to those areas where he reasonably could expect to find such a person. While conducting this search, Hennessy noticed obvious signs of a struggle and an athletic bag with a considerable amount of blood on it. He did not see bullets, bullet holes or bullet markings.

Hennessy heard on his police radio that a man who had been shot had been found a short distance away. He headed in that direction only to observe other officers already there. He called for a crime scene search officer and remained in the first floor hallway of 711 Irving Street.

Lieutenants Dryden and Stiftar, who had also heard the radio run about the shooting, arrived at the apartment building. Hennessy advised them that he had searched the apartment and that no one was in it. The lieutenants went upstairs, entered the apartment and examined it. Dryden testified that the purpose of their entry into the apartment was to investigate further and try to find out what happened. (Tr. 45). They were not aware that an apparent victim had been found. During their examination of the apartment, Dryden noticed two bullets as well as two bullet holes.

While the lieutenants were still in the apartment, Gmitter, a crime scene search officer, entered. Dryden pointed out certain evidence including bullets, bullet holes and the blood covered bag. Gmitter made a number of photographs and seized physical evidence.

At trial, the government key witness was Edward Juhans who had pled guilty to conspiracy to rob Calvin Smith. According to Juhans, that robbery attempt took place in Douglas-Bey's apartment with Douglas-Bey's participation in the robbery leading to the shooting of Smith and Smith's subsequent death from that shooting. The physical evidence which Douglas-Bey had attempted unsuccessfully to suppress, substantially corroborated Juhan's testimony and tended to contradict Douglas-Bey's testimony of what transpired.

Both sides agree that the entry and search by Hennessy was a valid emergency search within *Mincey v. Arizona*, 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978), and opinions of this court such as *United States v. Booth*, 455 A.2d 1351 (D.C.1983), and that he could have seized those items which he saw in plain view. *Id.* at 1356 n. 8, citing *Coolidge v. New Hampshire*, 403 U.S. 443, 466–67, 91 S.Ct. 2022, 2038, 29 L.Ed.2d 564 (1971). There, the agreement between the parties end.

The government contends that the second entry (the lieutenants) and the third entry (crime scene search officer) were also valid under the emergency exception to the warrant requirement. Alternatively they contend that even if we find the lieuten-

---

that the trial court incorrectly determined that a government witness had not adopted an earlier statement made by his attorney and thus refused to allow that statement to be used as a prior inconsistent statement to impeach the witness. The facts surrounding the statement fully support the trial court's conclusion that no tacit admission was made. *See Brown v. United States,* 464 A.2d 120 (D.C.1983).

Appellant also contends the trial court erred in denying his motion to dismiss for lack of speedy trial. We disagree. *MacDonald v. United States,* 456 U.S. 1, 10, 102 S.Ct. 1497, 1503, 71 L.Ed.2d 696 (1981); *Robinson v. United States,* 452 A.2d 354, 357 (D.C.1982).

ants' entry to have been unlawful, we should treat Gmitter, the crime scene search officer, as the alter ego of Hennessy and hold valid the seizure by him of the items which Hennessy saw.[2] They further assert based on this alternative, that since Gmitter was thus lawfully in the apartment, he could seize anything which was within his independent plain view. Douglas-Bey contends that both the second and third entries were in violation of the Fourth Amendment and that the evidence obtained thereby must be suppressed.

Both sides point us to *Mincey v. Arizona, supra,* and its progeny, both in federal and state courts, including opinions of this court construing those cases.[3] We need not engage in an extended evaluation of these cases or of the scholarly literature relating thereto[4] for after oral argument, the Supreme Court, by a per curiam opinion, decided *Thompson v. Louisiana,* —— U.S. ——, 105 S.Ct. 409, 83 L.Ed.2d 246 (1984), which we find dispositive of this case. In *Thompson,* sheriff's deputies arrived at Thompson's home in response to a homicide report. They entered the residence and discovered a person dead of a gunshot wound and Thompson unconscious in another room. The deputies transported Thompson to the hospital and secured the scene. Thirty-five minutes later, other sheriff's deputies arrived and entered the residence. They conducted a generalized search of the premises and seized certain evidence from a chest of drawers, a torn-up note in a wastebasket, and a letter in an envelope on a chest of drawers. A sharply divided decision of the Supreme Court of Louisiana held the seizures lawful. *State v. Thompson,* 448 So.2d 666 (La.1984).

In reversing, the Supreme Court rejected the attempts to distinguish *Mincey.* It pointed out that the evidence had not been discovered or seized during the entry for the purpose of searching for a "victim or suspect" as contemplated by *Mincey.*[5] The Court cited with approval the entire dissent of Chief Justice Dixon of Louisiana: "I respectfully dissent. All it would take to make this search legal is a warrant." *State v. Thompson, supra,* 448 So.2d at 673 (1984). Since we cannot say it better, we say as did Chief Justice Dixon: All it would take to make this search legal is a warrant.[6]

*Reversed and Remanded.*

NEBEKER, Associate Judge, concurring:

---

**2.** The government also contends that the sandal, false teeth and bloody bag were in the plain view of Gmitter while he was still in the public hallway. However, the testimony of Gmitter never states that he, in fact, saw these items from the public hallway. Rather, on cross-examination, he testified he "could have seen" certain things and not others from the public hallway. (Tr. 54–55).

**3.** The government also urges that *Michigan v. Tyler,* 436 U.S. 499, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978), is controlling. We disagree.

**4.** *See, e.g.,* Mascolo, *The Duration of Emergency Searches: The Investigative Search and the Issue of Re-entry,* 55 N.D.L.Rev. 7 (1979).

**5.** Since we reject the government's "alter ego" doctrine, *see Thompson v. Louisiana, supra, Mincey v. Arizona, supra, United States v. Dart,* 747 F.2d 263, 265 (4th Cir.1984), and *United States v. Booth, supra,* the fact that some of the evidence had been "discovered" by Hennessy

during a lawful emergency entry is of no consequence. Of course, in a retrial, Hennessy could testify to all he saw during his initial entry into the apartment.

**6.** We reject the government's contention that the trial court correctly denied suppression under the "inevitable discovery" doctrine enunciated in such cases as *Nix v. Williams,* —— U.S. ——, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984).

The government argues that the crime scene search officer (Gmitter) would have inevitably found all the physical evidence. However, we have found Gmitter's entry to have been unlawful. One of the requirements of the doctrine is that the lawful process which would have ended in the inevitable discovery have been commenced before the constitutionally invalid seizure. *Id., United States v. Satterfield,* 743 F.2d 827 (11th Cir.1984). No such process, *i.e.,* on the facts of this case, an application for a search warrant, is shown to have been initiated.

I agree that *Thompson*[1] and *Mincey*[2] are controlling here. But, unlike those cases, this case does not present a scope of search problem. Here, the evidence, including bullets, bullet holes, and a blood covered bag, were all seized in plain view shortly after the commission of the crime. Thus the crucial question is the validity of the actual entries made by officers Dryden, Stiftar, and Gmitter. Hennessy's entry and observations are concededly valid. The majority asserts that the procurement of a search warrant was the only way to legitimate the other officers' entries. True enough, since Hennessy had secured and departed the premises prior to their arrival. However, Hennessy could have stayed on the scene for the short period it took the others to arrive, thus not triggering the warrant clause of the Fourth Amendment. *Cf. Mincey v. Arizona, supra,* 437 U.S. at 392, 98 S.Ct. at 2413.

---

1. *Thompson v. Louisiana,* —— U.S. ——, 105 S.Ct. 409, 83 L.Ed.2d 246 (1984).

2. *Mincey v. Arizona,* 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978).