540 So.2d 1226 (1989)
STATE of Louisiana
v.
Paul HARRIS.
No. CR88-438.
Court of Appeal of Louisiana, Third Circuit.
March 15, 1989.
Rehearing Denied May 2, 1989.
*1227 Thomas Guilbeau, Lafayette, for defendant-appellant.
*1228 Donald M. Landry, Asst. Dist. Atty., Lafayette, for plaintiff-appellee.
Before DOMENGEAUX, FORET and YELVERTON, JJ.
DOMENGEAUX, Judge.
Paul Harris, the defendant, was indicted by a Lafayette Parish Grand Jury for a violation of La.R.S. 14:42, aggravated rape. He was tried by a jury of twelve in September of 1987, and was found guilty. On September 14, 1987, Judge Mouton sentenced the defendant to serve life in prison at hard labor without the benefits of parole, probation or suspension of sentence.
Harris sought this appeal of his conviction and has assigned nine errors. Assignments of Error Nos. 2, 7, 8 and 9 have not been briefed and are, therefore, considered abandoned. State v. Dewey, 408 So.2d 1255 (La.1982).

FACTS
On August 28, 1985, at about 1:10 a.m., Natalie Narcisse, the victim, was asleep in her home with her two-year-old daughter. She awoke to find an intruder in her bedroom. The intruder, wearing blue jeans, a white tee shirt and a red ski mask, was sitting on the end of her bed holding a butcher knife. After checking to see if her child was still beside her in the bed, Narcisse observed the intruder get up and stand over her. She noticed at this point that his penis was out of his pants.
Narcisse then turned to look at the intruder and he lunged at her. Instinctively, she grabbed the blade of the knife and was wounded. When she grabbed the knife, the assailant called her by her nickname, hesitated, and then told her to let the knife go or he would kill her little girl. When Narcisse heard the intruder speak she recognized his voice.
When Narcisse refused to release the knife, the assailant punched her in the face and twisted the knife out of her hand. Narcisse's child, who by this time had awakened, was screaming. The intruder placed the knife to the child's throat and threatened her if she did not stop crying.
Fearing for her life and the life of her child, Narcisse submitted to the intruder's demands. He then removed her shorts and raped her. The attack lasted about fifteen minutes, after which the assailant fled the house through the front door and was seen hopping a fence.
Narcisse went to one of her neighbors' homes and called the police, who responded at approximately 1:27 a.m. Several police units responded to the call, including a canine unit manned by Sgt. Charles Rogers. Rogers tracked the intruder to a house where the appellant was found.
Subsequent to undertaking certain preliminary matters, Rogers was joined at the house by other officers where they obtained the voluntary consent of the appellant's sister, the owner of the home, to search the house. Evidence seized during the search was subsequently used at the appellant's trial.
Later the same morning, Harris voluntarily appeared at the police station and participated in a voice lineup. The victim picked the appellant out of the lineup.

ASSIGNMENTS OF ERRORS NOS. 1, 3, 4 AND 5
By these assignments of error, Harris contends that he was denied his Sixth and Fourteenth Amendment rights to the effective assistance of counsel. He argues that actions which should have been taken prior to the commencement of the trial were not taken and that he was, thereby, denied the effective assistance of counsel. He specifically maintains that his trial counsel failed to move for the suppression of the following:
(1) Certain physical evidence taken from him on the morning of the alleged crime;
(2) All evidence seized during the search of his sister's home;
(3) Statements made by him to the police at the time of the voice lineup; and
(4) Failure of his counsel to object to the qualifications of the tracking dog and its handler.
*1229 It should be noted, initially, that a charge of ineffective assistance of counsel is properly raised in a petition for post-conviction relief. Where, however, the record contains evidence sufficient to resolve the issue and the alleged ineffectiveness is raised on appeal, the issue may be considered by an appellate court in the interest of judicial economy. State v. Seiss, 428 So.2d 444 (La.1983); State v. Tolliver, 464 So.2d 1088 (La.App. 1st Cir.1985).
Our courts have consistently held that an accused is guaranteed his federal Sixth Amendment right to counsel in state courts through the application of the Fourteenth Amendment. The courts have held that this right is necessary to protect the defendant's fundamental right to a fair trial. Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932); Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
Although this right is guaranteed by the due process clause, the basic elements of a fair trial are defined largely through the provisions of the Sixth Amendment which provides:
In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defense.
Thus, a fair trial is one in which certain evidence is subjected to adversarial testing by presentation to an impartial tribunal in advance of the actual trial on the merits.
The courts, because of the vital importance of an attorney, have determined that an accused is not only entitled to the presence, at every critical stage of the proceedings, of a person who happens to be a lawyer, but has further required that this representation provide effective assistance. Argersinger v. Hamlin, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972); Gideon, supra; McMann v. Richardson, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970). The judiciary has recognized that this right is violated when counsel fails to render adequate legal assistance because he either lacks or fails to employ the knowledge and skills expected of a member of the Bar. Cuyler v. Sullivan, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980); Strickland, supra.
When allegations of a violation of this right are raised on appeal the defendant bears the burden of proving that his attorney failed to meet the level of competency demanded of attorneys in criminal cases. The appellant must show that such failure prejudiced his cause and, but for such unprofessional errors or failures, the result of the proceedings would have been different. State v. Fickes, 497 So.2d 392 (La.App. 3rd Cir.1986), writ denied, 515 So.2d 1105 (La.1987); State ex rel. Graffagnino v. King, 436 So.2d 559 (La.1983).
The proper standard of an attorney's performance is that of reasonably effective assistance in light of all the circumstances. A defendant's attorney must avoid conflicts of interest, advocate his client's cause to the best of his ability and keep his client informed of important developments. Cuyler, supra. He must also, of course, use those skills and knowledge which render the proceedings a reliable adversarial process. Powell, supra.
While sources such as the American Bar Association standards of professional conduct are helpful in assessing an attorney's effectiveness, no particular set of rules for an attorney's conduct can satisfactorily take into account the variety of circumstances which might be faced or the range of legitimate decisions which might be made regarding how best to represent a criminal defendant. McMann, supra; Trapnell v. United States, 725 F.2d 149 (2nd Cir.1983). Moreover, any detailed set of rules would interfere with the constitutionally protected independence of the attorney and might restrict the wide latitude *1230 he must have in making tactical decisions. Michel v. Louisiana, 350 U.S. 91, 76 S.Ct. 158, 100 L.Ed. 83 (1955).
In considering allegations of ineffectiveness, defense attorneys are entitled to a strong presumption that their conduct fell within the broad range of reasonable professional assistance. The United States Supreme Court has held that the benchmark for judging a charge of ineffectiveness is whether the attorney's conduct so undermined the proper functioning of the adversarial process that the trial cannot be considered to have produced a just result. Michel, supra; United States v. Cronic, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984); Strickland, supra.
Effective assistance of counsel does not, however, mandate errorless counsel or counsel which might be judged ineffective only in hindsight. A fair assessment of an attorney's performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of the attorney's challenged conduct and to evaluate the conduct of the attorney from his perspective. A reviewing court may only then decide if a defendant was prejudiced by ineffectiveness. Strickland, supra; State v. Hartman, 479 So.2d 948 (La.App. 3rd Cir.1985), writ denied, 486 So.2d 748 (La.1986); State v. Berry, 430 So.2d 1005 (La.1983).
In the instant case, the appellant argues that his counsels' failure to move for the suppression of evidence seized by the police and statements obtained from him at a lineup, and his attorneys' failure to object to the court's ruling allowing the handler of the tracking dog to be qualified as an expert constituted ineffective representation. In support of this contention he argues that certain evidence, a pair of blood-stained blue jeans, was seized pursuant to a warrantless search and, hence, are inadmissible. Although the appellant concedes that a consent form was executed, he argues that its execution was improper since the person who signed it was not told what he might be charged with.
The State argues that Harris' attorneys' decision not to argue for the suppression of the evidence was a valid exercise of the counsels' discretion and appropriate action considering the particular circumstances of the case and the law relative to consent searches. It is well established that counsel for a defendant is not required to file motions and make objections which are unnecessary and the burden is on the defendant to show specific prejudice by his counsel's inaction. Seiss, supra. Harris has not met this burden.
The Fourth Amendment of the United States Constitution prohibits unreasonable searches and seizures. The Louisiana Constitution also protects against such searches and seizures but, provides even greater constitutional protection. La. Const.1974 Art. I, Sec. 5. As a result of Louisiana's expanded protection, any person adversely affected by an illegal search or seizure has standing to raise the illegality. State v. Parms, 523 So.2d 1293 (La. 1988); State v. Garrett, 461 So.2d 651 (La. App. 1st Cir.1984); State v. Williams, 489 So.2d 286 (La.Ap. 4th Cir.1986).
Generally, a search conducted without a warrant is per se unreasonable and, therefore, unconstitutional. Absent an exception to the warrant requirement, any evidence seized must be suppressed. Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); State v. Hathaway, 411 So.2d 1074 (La.1982); State v. Perkins, 451 So.2d 1146 (La.App. 4th Cir.1984). One exception applicable to the instant case, is when free and voluntary consent is given authorizing the search. Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); Vale v. Louisiana, 399 U.S. 30, 90 S.Ct. 1969, 26 L.Ed.2d 409 (1970); State v. Owen, 453 So.2d 1202 (La.1984); State v. Ossey, 446 So.2d 280 (La.1984), cert. denied, 469 U.S. 916, 105 S.Ct. 293, 83 L.Ed.2d 228 (1984).
Consent to a warrantless search is valid when freely and voluntarily given by a person who possesses common authority or has a sufficient relationship to the premises or effects sought to be inspected. State v. Dowling, 387 So.2d 1165 (La.1980); State v. Bodley, 394 So.2d 584 (La.1981); *1231 State v. Helwig, 489 So.2d 296 (La.App. 4th Cir.1986), writ denied, 495 So.2d 301 (La. 1986). When the State seeks to rely upon consent to justify a warrantless search, it is the party who has the burden of proving that the consent was freely and voluntarily given. Whether consent was given voluntarily is an issue of fact to be determined by the factfinder in light of the totality of the circumstances. The trier of fact may consider the credibility of the witnesses, as well as, the surrounding circumstances in determining the issue of voluntariness. On appeal, the factfinder's determination is entitled to great weight. State v. Edwards, 434 So.2d 395 (La.1983); State v. Thomas, 482 So.2d 32 (La.App. 5th Cir.1986); State v. White, 512 So.2d 590 (La.App. 3rd Cir. 1987).
Testimony adduced at trial, established that the residence searched was that of Diana Harris, the sister of the defendant. Ms. Harris was present at the residence when the officers sought the authority to conduct the search. Prior to the search, the police obtained both her verbal and written permission. The State in support of its case introduced the Consent to Search Form signed by Ms. Harris and brought forth testimony of two of the investigating police officers. Nothing was introduced to contradict this evidence.
The defendant's next ground for arguing that his legal counsel was ineffective rests on the fact that his attorneys failed to seek the suppression of statements made by him to the police at the time of the voice lineup. The record in this case reveals that fifteen pretrial motions were filed on behalf of Harris. We do not believe that the failure to seek the suppression of the statements rendered counsel ineffective, particularly, in light of the other significant efforts undertaken.
Finally, in support of his contention that his attorneys were ineffective, Harris argues that his attorneys failed to object to the court's ruling with respect to the qualifications of the tracking dog and its handler. Sgt. Rogers, in very lengthy testimony, clearly and thoroughly testified, as to Dax's expertise in the handling of canine officers, the extensive training given the police dog, Dax, and his abilities as a tracking dog. It is well-settled that trial judges are vested with broad discretion in determining the competence of an expert witness. State v. Michel, 422 So.2d 1115 (La.1982). We do not believe the trial judge in this instance abused his discretion. State v. Stucke, 419 So.2d 939 (La.1982); State v. Drew, 360 So.2d 500 (La.1978).
Failure to make the required showing of either deficient performance or sufficient prejudice defeats a charge of ineffective counsel. In the instant case, Harris failed in both respects. These assignments of error are, therefore, without merit.

ASSIGNMENT OF ERROR NO. 6
The defendant contends, by this assignment of error, that the verdict is contrary to the law and the evidence.[1] Harris argues that the State failed to prove each and every element of the crime charged. In support of his contention he argues:
(1) There was no positive identification of him as the assailant;
(2) He had an alibi as to his whereabouts during the commission of the crime;
(3) Although, the victim testified that the assailant wore a white shirt, a ski mask and used a knife, none of these items were ever found or identified with him; and
(4) The victim's testimony in court conflicted with her statements to the police.
Harris contends that the evidence, viewed in the light most favorable to the prosecution, is insufficient and that his conviction should be overturned. Jackson v. Virginia, *1232 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
The State maintains that the verdict is not contrary to the law and evidence and that it proved every element of the crime charged. The State further argues that the record supports its position.
The defendant's assertion that the State failed to meet the Jackson v. Virginia standard is not supported by the record. In the instant case, the State presented overwhelming evidence that the defendant did commit the crime of aggravated rape.
The State in establishing its case produced testimony by the victim that the appellant had vaginal sexual intercourse with her, without her consent and that he was not her spouse. The victim specifically testified that she was prevented from resisting the defendant's advances because of threats of great and immediate bodily harm to herself and her two-year-old daughter. The evidence clearly indicates that the threats were accompanied by the apparent power of execution as evidenced by the fact that the defendant brandished a butcher knife and wounded the victim.
Narcisse testified that she recognized the voice to be that of the defendant Harris. She testified that she knew the intruder by name and that she recognized his voice because she had met him during a card game at a friend's home. Supporting her testimony is the fact that she picked him out during a voice lineup on the morning of the crime.
The State also presented the testimony of the investigating officers. Sgt. Rogers, the canine officer, established how he tracked the suspect's path to the house where he was found. The State also brought forth evidence that shortly after the occurrence a pair of blood stained blue jeans were seized from the defendant's bedroom in his sister's home. The evidence was particularly significant as the record revealed that the victim was menstruating at the time she was raped in addition to bleeding from the knife wound.
Lastly, Howard Joseph Verret, Jr., a forensic chemist, testified that there was evidence indicating a rape. Verret also testified about the possibility that the appellant was the perpetrator. Verret advised the Court that the appellant's blood type matched the blood grouping of the person whose semen was obtained from the victim and from the sheets of the victim's bed.
Harris' attorneys defended him by attempting to establish an alibi. Three persons, Clarville Lilly, Denise Louis and Geraldine Louis, testified that they had either been with or observed the appellant on the date of the crime. None of them, however, had any knowledge of what he was doing or where he was between 11 p.m. on August 27th and 2 a.m. on August 28th, the time during which the crime was committed.
The record reveals no manifest error in the verdict and shows sufficient evidence, both direct and circumstantial, to support the fact that the appellant committed the crime. This assignment, therefore, lacks merit.
For the above and foregoing reasons, the conviction of Paul Harris is affirmed.
AFFIRMED.
NOTES
[1] Although reviewing courts are obligated to follow the Jackson standard as mandated by the Louisiana Supreme Court, the author of this opinion has expressed opposition to this standard because it relegates the reviewing power of the appellate courts to nothing more than "second guessing" the triers of fact. See my concurring and dissenting opinions in State v. Gatson, 434 So.2d 1315 (La.App. 3rd Cir.1983); State v. Anderson, 440 So.2d 205 (La.App. 3rd Cir.1983); and State v. Bryan, 454 So.2d 1297 (La.App. 3rd Cir.1984), writ denied, 458 So.2d 128 (La.1984).