728 So.2d 1 (1998)
STATE of Louisiana, Appellee,
v.
Clarence LEWIS, Defendant-Appellant.
No. 97-1244.
Court of Appeal of Louisiana, Third Circuit.
March 6, 1998.
Writ Denied September 18, 1998.
*2 Robert Richard Bryant Jr., Lake Charles, for State.
Phyllis E. Mann, Alexandria, for Clarence Lewis.
Before DECUIR, AMY and PICKETT, Judges.
AMY, Judge.
The defendant, Clarence Lewis, was convicted of possession of cocaine, a violation of La.R.S. 40:967(C). He was subsequently adjudicated a second habitual offender and was sentenced to three years at hard labor. He appeals his conviction and sentence. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND
The instant matter arose on September 16, 1995 when deputies from the Calcasieu Parish Sheriff's Office were dispatched to an area of the parish pursuant to a call regarding suspected drug activity. According to their trial testimony, when the deputies arrived in the reported area, they saw four individuals, including the defendant, Clarence Lewis. After speaking with the individuals, one of the deputies asked the defendant if he had any weapons. According to the deputy, the defendant stated that he had a knife, and allowed the deputy to retrieve the knife from his pocket. As he was doing so, the deputy felt a hard metal object. This object was pulled from the defendant's pocket and later identified as a crack pipe. Subsequent to this discovery, the defendant was arrested for possession of drug paraphernalia and possession of a Controlled Dangerous Substance, Schedule II.
Subsequent to this arrest, the defendant was charged on October 25, 1996, by grand jury indictment, with one count of possession of cocaine, a violation of La.R.S. 40:967(C). The defendant entered a plea of not guilty to the charge on December 16, 1996. Following *3 a jury trial, the defendant was found guilty as charged on May 29, 1997.[1] On that same date, a habitual offender bill was filed, charging the defendant as a second habitual offender. The defendant denied the habitual offender charges and a hearing was held on this issue on June 24, 1997. The trial court found the evidence sufficient to adjudicate the defendant a habitual offender. Following this adjudication, the defendant was sentenced on July 17, 1997 to three years at hard labor, to run consecutive to any other time he was required to serve due to probation or parole violations.
The defendant now appeals his conviction and sentence, alleging seven assignments of error and several pro se assignments of error.[2]

DISCUSSION

Errors Patent
In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. Our review of the record discloses two errors patent.
First, the defendant was not informed of his right to remain silent at his habitual offender adjudication. However, this court has previously found that only harmless error results from the trial court's failure to advise of this right when the defendant remains silent throughout the proceeding and the State presents competent evidence to prove the existence of the defendant's prior conviction and his identity as the person previously convicted. State v. Washington, 96-656 (La.App. 3 Cir. 1/15/97), 687 So.2d 575, citing State v. Hodges, 94-898 (La.App. 3 Cir. 3/1/95), 651 So.2d 487. We find this rule applicable in the present case as the defendant denied the allegations contained in the habitual offender bill and a hearing was subsequently held at which time the State introduced documentary evidence of his prior convictions. Thus, we conclude that any error is harmless.
Our review also reveals that the defendant was not given credit toward service of his sentence for time he spent in actual custody prior to the imposition of the sentence.[3] Accordingly, we amend the sentence to reflect that the defendant is given credit for time he served prior to the imposition of the sentence and remand the case to the district court with orders to amend the commitment and minute entry of the sentence to reflect credit for time served in conformity with La.Code Crim.P. art. 880. See La.Code Crim.P. art. 882(A).

Sufficiency of the Evidence
By this assignment, the defendant claims the evidence was insufficient to support the verdict of possession of cocaine. He contends that the State failed to prove he "knowingly and intentionally had an invisible amount of cocaine residue in a small piece of metal pipe in his pocket." The defendant asserts as "a quite reasonable hypothesis of innocence" that he "found and put in his pocket a small piece of metal pipe, not knowing that it contained invisible amounts of cocaine." He further argues the following:

*4 Mr. Cornell Chaumont testified that he performed the test on the residue contained in the metal pipe in Mr. Lewis's pocket and that pipe contained cocaine. [] Mr. Chaumont, the State's expert, also testified that the residue contained in the pipe had "no weight." [] He explained "Residue is not a visible thing sometimes." [] Further, he agreed that the only way he could tell there was cocaine residue in the pipe received from Mr. Lewis was by pouring a solvent into the pipe. [] If Mr. Chaumont could not see the cocaine residue in the pipe, in all likelihood neither could Mr. Lewis.
If sufficiency of the evidence is raised on appeal, an appellate court must consider whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State ex rel. Graffagnino v. King, 436 So.2d 559 (La.1983). Additionally, as the fact finder is given the role of weighing the credibility of witnesses, an appellate court should not second guess this determination beyond the Jackson sufficiency evaluation. See State ex rel. Graffagnino, 436 So.2d 559.
With regard to the State's burden of proof in a case similar to the instant matter, the fourth circuit has recently stated as follows:
To support a conviction for possession of a controlled dangerous substance, the State must prove that the defendant was in possession of the illegal drug and that he knowingly or intentionally possessed the drug. La. R.S. 40:967; State v. Chambers, 563 So.2d 579 (La.App. 4 Cir.1990). Guilty knowledge is an essential element of the crime of possession of a controlled dangerous substance. State v. Goiner, 410 So.2d 1085 (La.1982). Although a conviction for possession of a controlled dangerous substance can stand on the possession of the slightest amount of the drug, the amount of the substance will have some bearing on the defendant's guilty knowledge. State v. Spates, 588 So.2d 398 (La.App. 2 Cir.1991).
State v. Taylor, 96-1843, p. 6-7 (La.App. 4 Cir. 10/29/97), 701 So.2d 766, 771.
In attempting to meet this burden, the State presented the testimony of Deputy Phillip David Nolen, the deputy who retrieved the pipe at issue. Deputy Nolen testified that he pulled a "metal pipe approximately five inches long" from the defendant's pocket. When asked the common street name for that type of pipe, Deputy Nolen replied, "[a] crack pipe." He stated that the retrieved pipe was burned on both ends. Additionally, he gave the following description when asked what a crack pipe usually looks like:
It's a longor, I say long, it's a metal pipe, slender. It doesn't have any curves in it. It hasnormally crack pipes are burnt on both ends, and on one side of the crack pipe they do have athey stuff a Brillo pad, like wiry mesh, in there, and that's where they place the crack, and they heat it up, and they smoke it through the pipe.
When asked whether the crack pipe found in the present case had any other purpose other than to smoke crack cocaine, Deputy Nolen responded, "No, sir." On cross-examination, Deputy Nolen further described the pipe in question as having wire mesh with burnt residue on one end, residue he assumed was cocaine.
Deputy Kelvin LeDoux, a deputy who also responded to the offense at issue, testified and identified a chrome object being presented at trial by the prosecution as "a smoking pipe for the crack cocaine." He stated that the pipe looked like the object taken from the defendant's pants and also testified the "copper mesh-type material" in the pipe taken from the defendant had a burned residue suspected to be crack cocaine.
Deputy Micah Benoit, another deputy responding to the scene, testified that he did not see Deputy Nolen actually recover the object from the defendant, but did see a "small, tube-like pipe, silver in color." He stated that the object looked like a crack pipe. When asked what he saw in the pipe found at the scene, Deputy Benoit testified, "[s]ome Brillo had been shoved down, and it's been burnt." When asked if he saw some burned residue suspected to be crack cocaine residue, Deputy Benoit responded, "Yes, sir."
*5 In order to establish the nature of the residue in the pipe, the State presented Cornell Chaumont, a forensic chemist with the Southwest Louisiana Crime Lab. He testified that his testing on the residue found in the pipe in question revealed the presence of cocaine.
In State v. Jones, 94-1261 (La.App. 3 Cir. 5/17/95), 657 So.2d 262, this court upheld the defendant's possession of cocaine conviction under facts similar to those in the present case. In Jones, officers found a shiny chrome crack pipe with a scorched blackened end and a clear plastic bag containing a substance resembling crack cocaine. These objects had allegedly been thrown by the defendant while fleeing from the police. Although the substance in the plastic was found to be counterfeit cocaine, the residue inside the pipe tested positive for cocaine. Like the defendant in the present case, the defendant in Jones claimed the evidence was insufficient to prove he knowingly or intentionally possessed the cocaine. In its analysis, the court in Jones discussed several cases, including State v. Trahan, 425 So.2d 1222 (La. 1983). However, Trahan was distinguished as the possession at issue in the supreme court case was constructive rather than actual physical possession.
Additionally, this court in Jones found persuasive the reasoning advanced in State v. Spates, 588 So.2d 398 (La.App. 2 Cir.1991), wherein the second circuit affirmed the conviction of a defendant found with a crack pipe containing residue. The second circuit found as follows:
We also find that defendant had the requisite guilty knowledge that the straight shooter contained cocaine. As we have stressed, the piece of antenna is utterly without utility other than for the ingestion of a controlled dangerous substance, namely, that found, cocaine. From the nature of the defendant's possession of an object with no other use, save as drug paraphernalia, there is no other reasonable explanation but that he had guilty knowledge that the straight shooter contained cocaine residue. Viewing the evidence presented in a light most favorable to the prosecution, we find the state has proven the essential elements of the crime of possession of cocaine beyond a reasonable doubt.
Spates, 588 at 402.
As in Jones and Spates, the possession at issue in the present case is actual physical possession rather than constructive possession as in Trahan. Furthermore, the pipe at issue was described by officers as being burned at both ends and having a wire mesh containing burnt residue, which was tested later to be cocaine. Although the defendant argues that the present case "is unlike those where the evidence was sufficient to support intent to possess contraband because the defendant possessed an instrument that had no utility other than the ingestion of drugs," as "[a] small piece of metal pipe has many perfectly legal uses ... [,]" we note that, based on his experience as a Calcasieu Parish Sheriff's Deputy for the last six years, Deputy Nolen responded "No, sir" when asked if the pipe had any other purpose than to smoke crack cocaine. Accordingly, we conclude that evidence as to the pipe's limited use was available for the jury's consideration. This assignment lacks merit.

Motion to Suppress
The defendant asserts the trial court erred in denying his Motion to Suppress the evidence seized because it was the fruit of an illegal arrest and search. Specifically, he claims the deputies did not have reasonable suspicion that he had committed a crime or that he was armed with a dangerous weapon.
Unreasonable searches and seizures are prohibited by both the Fourth Amendment to the United States Constitution and Article 1, § 5 of the Louisiana Constitution. An illegal detention of a person is considered an unreasonable seizure. It is well settled that a seizure and search conducted without a warrant issued upon probable cause is per se unreasonable unless the warrantless seizure and search can be justified by one of the narrowly drawn exceptions to the warrant requirement. State v. Tatum, 466 So.2d 29 (La.1985).
A form of "seizure" which is permitted without the need of a warrant or probable cause is an investigatory stop made *6 pursuant to La.Code of Crim.P. art. 215.1(A). See Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). "The right to make an investigatory stop and question the particular individual detained must be based upon reasonable cause to believe that the person has been, is, or is about to be engaged in criminal conduct." State v. Belton, 441 So.2d 1195, 1198 (La.1983), cert. denied, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984). Further, the totality of the circumstances must be considered in determining whether reasonable cause exists. Belton, 441 So.2d 1195 citing United States v. Cortez, 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981).
"[I]n determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or "hunch," but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." Terry, 392 U.S. at 27, 88 S.Ct. at 1883. If the police officer has a specific suspicion of criminal activity, he may further detain the individual while he diligently pursues a means of investigation likely to quickly confirm or dispel the particular suspicion. U.S. v. Sharpe, 470 U.S. 675, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985).
The Louisiana Supreme Court explained the justification for a weapons frisk in State v. Wade, 390 So.2d 1309 (La.1980), cert. denied, 451 U.S. 989, 101 S.Ct. 2326, 68 L.Ed.2d 848 (1981):
The purpose of allowing a limited weapons search is to prevent harm to police officers by allowing action prior to a crisis stage. Terry, supra. Police officers are not required to stand by and give a suspect the first move before taking action. "The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." Terry, 392 U.S. at 27, 88 S.Ct. at 1883. Equally important is the protection of the suspect, presumed innocent by law, from the harm that could result to him should he naively do an act interpretable as reaching for a weapon at a time when a police officer may reasonably suspect the presence of a weapon. Within this class of actions could be such innocent acts as reaching into the back pocket to produce a wallet or thrusting a hand into a jacket for a pack of cigarettes.
Wade, 390 So.2d at 1312-1313.
However, even after a lawful stop, a police officer is not always justified in frisking a suspect for weapons. See State v. Hunter, 375 So.2d 99 (La.1979). A weapons frisk is justified under circumstances where a "reasonably prudent man ... would be warranted in the belief that his safety or that of others was in danger." Terry, 392 U.S. at 27, 88 S.Ct. at 1883 (1968). It is sufficient that an officer establish a "substantial possibility" of danger by pointing to particular facts which support such a reasonable inference. State v. Bolden, 380 So.2d 40, 42 (La. 1980), cert. denied, 449 U.S. 856, 101 S.Ct. 153, 66 L.Ed.2d 70 (1980). La.Code Crim.P. art. 215.1(B) provides statutory authority for an officer conducting an investigatory stop to conduct a pat down search of the outer clothing for dangerous weapons and, as the courts have noted, in many situations the circumstances that justify the investigatory stop also warrant the frisk. State v. Mingo, 93-827 (La.App. 1 Cir. 6/24/94), 638 So.2d 1209.
At the hearing on the defendant's Motion to Suppress, Deputy Nolen testified that he was dispatched to Franklin and Lewis Streets in reference to "subjects in the area buying and selling narcotics." However, no description of the suspects was given. Upon his arrival to the scene, Deputy Nolen saw the defendant along with three other persons. After these subjects were stopped, Deputy Nolen spoke with the defendant. When asked what prompted him to stop these individuals, including the defendant, Deputy Nolen responded that it was both the dispatcher's call and the fact that a female in the group had been arrested several times on narcotics charges. He also testified the area in question is a high crime area.
With regard to the subsequent search, Deputy Nolen testified as follows:
I spoke to Mr. Lewis, asked him to place his hands on my car. I asked him if he had any weapons on his person. He told *7 me he did. He told me he had a knife in his back pocket. At that time I asked him if I could remove that knife, that object. At that time he said yes. I took out the knife, and at that time I came in contact with a pipe.
He stated that did not know what the other object in the defendant's pocket was at first, and testified it could have been a weapon.
Deputy Kelvin LeDoux, who also responded to the dispatcher's call stated the following when asked what type of procedure Deputy Nolen used in retrieving the knife:
Before he proceeded with a pat-down on the subject, he asked him if he had any weapons on his person. At this time Mr. Lewis said he did. He advised Deputy Nolen he had a knife in his rear pocket. At that time he told NolenDeputy Nolen that he could remove the knife. Deputy Nolen went and recovered the knife, and at that same time that's when he found the crack pipe.
Following this testimony, which was heard at the suppression hearing, the trial court denied the Motion to Suppress, stating as follows:
The question or issue involved herein is whether or not the search was free and voluntary, and also whether or not they had a right to stop the individual at the time that they stopped him. In this particular instance, after hearing the testimony of Officer Nolen and Officer LeDoux, the court is satisfied that in this particular instance the facts are that these officers were dispatched to the corner of Franklin and Mill Streets in the City of Lake Charles. The area in question is known to be a high crime area. The officers were sent or disbursed to that area under the suspicion of drug activity going on at that particular time. There was certainly adequate drug activity going on in that particular area previous hereto. The officers went, after the dispatching, to that particular area. At that point there were individuals observed, one of them being a person who had been picked up for drug activity previously. The officers at that particular point certainly had reasonable grounds to stop the individuals to at least talk to them. In this particular instance, Mr. Lewis, the defendant in this case, was not immediately patted down, but, rather questions were asked of him. At the particular point, the officer, Officer Nolen, requested whether or not Mr. Lewis had a weapon upon him, and Mr. Lewis apparently, in this case, voluntarily stated that he had a knife in his left rear pocket. That being the case, a knife, of course, can be used as a very dangerous instrument. But, at the same time, Officer Nolen testified, and it was confirmed by Officer LeDoux, that, upon request to go into the pocket, Mr. Lewis did, without question, authorize him to do so. So it comes within the exception ofin this particular instance, as far as the search is concerned, the search was free and voluntary on Mr. Lewis' part at that time. At the point he went in to look for the knife at the same time there was discovered a pipe which was suspected to be a pipe used in the smoking of cocaine. Apparently it had residue thereon. Of course, the pipe, having been pulled out of the pocket at the same time upon suspicion that it may be either another knife or another instrumentalityI think it was reasonable for the officer to pull the pipe out, and upon observing what it was, at that point he had reason to place the defendant under arrest at that time. In view of this fact, the Court is going to deny the Motion to Suppress....
"A trial judge's decision to deny a motion to suppress will be afforded great weight and will not be set aside unless to do so is clearly mandated by a preponderance of the evidence." Taylor, 96-1843, p. 3-4, 701 So.2d at 770. After a review of the totality of the circumstances, we conclude that a reversal of the trial court's denial is not clearly mandated by a preponderance of the evidence.
The deputies involved were responding to a call of suspected drug activity in a high crime area and saw four individuals in that area, one being previously involved in drug activity. This court has previously stated that an area's reputation of high crime activity is an articulable fact relevant in a determination of reasonable cause. State v. Cormier, 94-537 (La.App. 3 Cir. 11/2/94), 649 So.2d *8 528.Thus, the officers had reasonable cause to believe the defendant had committed a crime or was about to commit a crime, making the investigatory stop of the defendant lawful. See also Taylor, 701 So.2d 766.
As for the search pursuant to the stop, we conclude that this too is supported by the factors presented. From the testimony of both officers, the defendant told Deputy Nolen he had a knife in his pocket and allowed the deputy to retrieve the knife. In State v. Harris, 540 So.2d 1226 (La.App. 3 Cir.1989), recon. denied, 550 So.2d 626 (La. 1989), this court explained:
Consent to a warrantless search is valid when freely and voluntarily given by a person who possesses common authority or has a sufficient relationship to the premises or effects sought to be inspected. State v. Bowling, 387 So.2d 1165 (La.1980); State v. Bodley, 394 So.2d 584 (La.1981), State v. Helwig, 489 So.2d 296 (La.App. 4th Cir.1986), writ denied, 495 So.2d 301 (La.1986). When the State seeks to rely upon consent to justify a warrantless search, it is the party who has the burden of proving that the consent was freely and voluntarily given. Whether consent was given voluntarily is an issue of fact to be determined by the factfinder in light of the totality of the circumstances. The trier of fact may consider the credibility of the witnesses, as well as, the surrounding circumstances in determining the issue of voluntariness. On appeal, the factfinder's determination is entitled to great weight. State v. Edwards, 434 So.2d 395 (La.1983); State v. Thomas, 482 So.2d 32 (La.App. 5th Cir.1986); State v. White, 512 So.2d 590 (La.App. 3rd Cir.1987).
Id. at pp. 1230-31.
Our review of the record indicates an absence of any evidence that the defendant's consent was involuntary. Moreover, the defendant does not argue it was involuntary. The defendant simply mentions in brief that Deputy Nolen did not include the defendant's consent in his written report of the offense. However, both officers testified as to the defendant's consent. Thus, we conclude that the trial court did not err in finding that the search and subsequent seizure of the defendant's knife was voluntary.
Finally, the deputy was lawfully searching in the defendant's pocket when he found another hard, metal object. When asked on cross-examination how he felt the object, Deputy Nolen testified:
I reached in, and at the time of removing the knife I also felt aa hard object that could have possibly been a weapon at the time. I didn't know for sure exactly what it was until I removed it.
We find no error in the trial court's determination that the subsequent seizure of the pipe, too, was lawful. Accordingly, this assignment lacks merit.

Challenge of Venireperson
By this assignment, the defendant claims the trial court erred in denying his challenge for cause of venireperson Falkenhagen. In his brief, the defendant notes the transcript of voir dire is not included in the appellate record. However, he claims it should have been included since he designated "trial including the oral testimony of all witnesses." In support of this claim, the defendant cites La.Code Crim.P. art. 761, which states, "[a] jury trial commences when the first prospective juror is called for examination." The defendant requests this court stay the appellate proceedings in order for voir dire to be transcribed.
In brief, the defendant asserts that "[w]hen a defendant uses all of his peremptory challenges, and a challenge for cause is erroneously denied by a trial court, prejudice is presumed and the defendant's conviction and sentence must be reversed." Despite this argument, the defendant does not allege the basis for the challenge for cause or the trial court's reason for denying the challenge. Thus, the defendant has not shown that the trial court abused his discretion in denying the challenge. Moreover, the defendant does not allege how he was prejudiced, other than the fact that he used all of his peremptory challenges. As we find that the defendant does not present any facts or argument to prove that the trial court erroneously denied the challenge, we conclude that the defendant has insufficiently briefed this issue and, *9 accordingly, find that this assignment lacks merit.

Oral Motion to Recuse
The defendant next claims that the trial court erred in failing to grant his oral motion to recuse the trial judge and the Calcasieu Parish District Attorney's Office. Before jury selection, defense counsel informed the court that the defendant wanted to recuse both the trial judge and the district attorney's office because of a civil action he had pending against them in the Fourteenth Judicial District Court.
The trial court refused to consider the motion as he found that it was untimely. Defense counsel objected to the court's ruling since trial had not yet begun. No further argument was made.
Our review of the record indicates that the defendant did not file a written motion to recuse either the trial judge or the prosecutor. La.Code Crim.P. art. 674 provides the procedure for recusing a trial judge as follows:
A party desiring to recuse a trial judge shall file a written motion therefor assigning the ground for recusation. The motion shall be filed prior to commencement of the trial unless the party discovers the facts constituting the ground for recusation thereafter, in which event it shall be filed immediately after the facts were discovered, but prior to verdict or judgment. If a valid ground for recusation is set forth in the motion, the judge shall either recuse himself, or refer the motion for hearing to another judge or to a judge ad hoc, as provided in Article 675.
(Emphasis added).
In State v. Crothers, 278 So.2d 12 (La. 1973), cert. denied, 414 U.S. 1096, 94 S.Ct. 731, 38 L.Ed.2d 555 (1973), the Louisiana Supreme Court found that the denial of an oral motion for recusal of a trial judge presents nothing for the court to review. Neither do we find anything in the record to indicate that either the defendant or his counsel knew that the defendant had a pending suit against the trial judge. See State v. Williams, 517 So.2d 1268 (La.App. 4 Cir. 1987), writ denied, 520 So.2d 748 (La.1988). Accordingly, we find nothing to review with regard to the Motion for Recusal of the trial judge. See State v. Prater, 583 So.2d 520 (La.App. 3 Cir.1991), writ denied, 93-1715 (La.6/17/94), 638 So.2d 1087.
La.Code Crim.P. art. 681 provides the procedure for recusing a district attorney:
A district attorney may recuse himself, whether a motion for his recusation has been filed or not, in any case in which a ground for recusation exists. A motion to recuse the district attorney shall be in writing and shall set forth the grounds therefor. The motion shall be filed in accordance with Article 521, and shall be tried in a contradictory hearing. If a ground for recusation is established the judge shall recuse the district attorney.
Article 521 provides for pretrial motions to be made or filed within fifteen (15) days after arraignment, "unless a different time is provided by law or fixed by the court at arraignment upon a showing of good cause why fifteen days is inadequate." That article further provides "[u]pon written motion at any time and a showing of good cause, the court shall allow additional time to file pretrial motions." Since the motion in the present case was filed the day trial began (which was more than fifteen days after arraignment) and the trial court had not granted additional time for the defendant to file the motion, the motion was not filed within the time limitations of Article 521. Also, the motion to recuse was not written as required by Article 681. As with the motion to recuse the trial judge, we conclude that, here too, the defendant had prior knowledge of any potential conflict. See State v. Woods, 283 So.2d 753 (La.1973). Accordingly, we conclude that the trial court's denial of the motion was proper.

Objections to Habitual Offender Bill
By this assignment, the defendant claims the trial court erred in failing to allow him fifteen days to file particular objections to the habitual offender bill after informing him of his rights. La.R.S. 15:529.1(D)(1)(a) provides in pertinent part:

*10 If he denies the allegation of the information or refuses to answer or remains silent, his plea or the fact of his silence shall be entered on the record and he shall be given fifteen days to file particular objections to the information, as provided in Subparagraph (b).
Our review of the record indicates that the trial court did not err. First, the defendant proceeded to the hearing immediately after he was arraigned on the habitual offender bill without objecting thereto. Any irregularity with arraignment is waived if the defendant proceeds to trial without such an objection. La.Code Crim.P. art. 555. Furthermore, the defendant waives review of an error without contemporaneously objecting to the error. La.Code Crim.P. art. 841. Finally, the defendant does not allege any particular objections he was not able to raise because of the failure to allow him fifteen days to respond.
Additionally, the habitual offender bill of information was filed on May 29, 1997, with the arraignment and hearing being held on June 24, 1997. Thus, the defendant had twenty-six days to review the habitual offender bill and file any objections thereto.
For the foregoing reasons, this assignment lacks merit.

Counsel at Prior Guilty Plea
Next, the defendant claims that the State failed to prove beyond a reasonable doubt that he was represented by counsel when he entered the prior guilty plea that formed the predicate offense for his habitual offender status. However, the State introduced the minutes of the defendant's December 4, 1984 guilty plea to three counts of distribution of a controlled dangerous substance, the predicate offense. That minute entry states that the defendant appeared with counsel, Lester Robertson.
Based on this entry, we conclude that this assignment lacks merit.

Pro Se Briefs
In addition to that submitted by his counsel, the defendant has submitted three pro se briefs entitled "The Appeal of Clarence D. Lewis," dated June 11, 1997, July 28, 1997 and August 1, 1997, respectively. These briefs are not stamped as being filed with this court, but were included in the brief folder of the record. Out of and abundance of caution, however, we will address these issues as they relate to the appeal in of this matter.[4]

Joinder of Charges
It appears from several of the defendants' assignments, that he is alleging the State improperly joined two charges in the indictmenta misdemeanor and a felonyin order to confuse the jury into rendering a verdict for the felony of possession of cocaine.[5] As to the claim that the State improperly joined two charges in the indictment, two claims were not joined in the indictment. Although the defendant was originally arrested for possession of drug paraphernalia and possession of a controlled dangerous substance, the defendant was only charged with possession of the cocaine.
The defendant also claims that the minutes show the State admitted he could not be prosecuted for the misdemeanor. The defendant does not refer to specific minutes. However, in closing argument, defense counsel argued the evidence supported a charge of drug paraphernalia only, not possession of cocaine. He also stated that the defendant had not been to court on that charge, and as far as he knew, the charge was still pending. Additionally, defense counsel stated, "[L]et's *11 let him face the consequences of going to trial on possession of drug paraphernalia." In response to that statement, the State argued in closing argument that, "He knows that I cannot try his client for possession of drug paraphernalia. So when he says to you, `Let him answer for the drug paraphernalia,' that's a misnomer."
The defendant further argues the jury was confused as to whether they were rendering a verdict on the misdemeanor or the felony. They were so confused, the defendant argues, they went into deliberations three times. "At that point," the defendant claims, "the Prosecutor saw their confusion, and demanded a guilty verdict on the felony. The jury went out and came in with a verdict not in compliance with the charge actually prosecuted." This assertion is without merit.
The jury asked the judge only one questionto be reinstructed on possession of cocaine. The record does not indicate any other requests for instructions were made, and the jury rendered a verdict of possession of cocaine shortly after they were reinstructed.
Finally, defendant argues as follows: 1) "The minutes will show that after the defense exposed the prosecution's methods of entertaining both charges, he admitted to his procedure," and 2) "The State Prosecutor had to find some way to try a case that had no merit, limitations had already expired to prosecute, on misdemeanor, and prosecution had no evidence to try on felony." The defendant has not shown any ill practice on the part of the State nor has he shown if the time limitations have expired on the misdemeanor, nor do we find that such a showing would make a difference. Furthermore, the defendant was charged with the felony of possession of cocaine on October 24, 1996, less than two years from the date of the offense, September 16, 1995. Thus, the time limitations for charging the defendant with the misdemeanor of possession of drug paraphernalia had not run. See La.Code Crim.P. art. 572(3). For the foregoing reasons, this claim lacks merit.
In these assignments, the defendant also appears to be arguing that the evidence was insufficient to convict him of possession of cocaine. As we have previously discussed this assertion, we will not address it here.

Recusal and Venue Motions
In this assignment, also contained within the defendant's June 11, 1997 brief, the defendant asserts various reasons why the trial court should have granted the motions for recusal of the judge and district attorney's office. Since these claims, as briefed by the defendant are only conclusory allegations, we rely on our former discussion regarding the motions for recusal.
As for the defendant's assertion that a change of venue is required, we note that the record does not indicate that such a change was requested by defense counsel before trial. Moreover, the defendant has not asserted any facts warranting a change of venue i.e., that any prejudice, undue influence or any other reason would deny him a fair trial in Calcasieu Parish, and that the prejudice or influence would affect the answers of jurors in the voir dire examination or the testimony of witnesses at trial. La.Code Crim.P. art. 622.
For these reasons, these assignments lack merit.

Instructions
In this assignment, the defendant asks the following:
Did the jury interpret the law applicable under the codes of criminal procedure? Was the jury properly advised in the rendering of a verdict, in relationship to the charge. Did the jury know, that a verdict for one charge doesn't mean that a conviction stood for both, when the preponderance of the evidence clearly shows what charge is actually being tried? Did judge advise jury correctly?
Other than what has already been discussed, it appears the defendant may be challenging the trial court's denial of defense counsel's request for the jury to be instructed on possession of drug paraphernalia.
After the trial court instructed the jury, it allowed for objections to be placed on the record. At that time, defense counsel noted his objection to the trial court's refusal to instruct the jury as to the definition of drug *12 paraphernalia. It appears from his written request that the defendant asked for the definition of drug paraphernalia and the offense of possession of drug paraphernalia to be read to the jury, but not that possession of drug paraphernalia be given as a responsive verdict. The court ruled as follows: "It's not a responsive verdict, and the court has determined the same. Therefore, the court is not going to issue that instruction to the jury."
In State v. Campbell, 94-1140 (La.App. 3 Cir. 3/13/96), 673 So.2d 1061, writ denied, 96-1785 (La.1/10/97), 685 So.2d 140, cert. granted in part, ___ U.S. ___, 118 S.Ct. 29, 138 L.Ed.2d 1059 (1997), this court discussed a trial court's refusal to instruct the jury on the law of negligent homicide in response to the defendant's request to do so. The defendant was charged with second degree murder. He requested the jury be instructed as to the definition of negligent homicide and that negligent homicide be given as a responsive verdict. Addressing the trial court's refusal to give the requested instructions, this court stated the following:
La.Code Crim.P. art. 802(1) requires the court to instruct the jury as to the law applicable to the case. When properly requested to do so, the court is obligated to charge the jury as to the law applicable to any theory of defense which the jurors could reasonably infer from the evidence. State v. Jackson, 450 So.2d 621 (La.1984).
Id. at p. 13, 1069. Although it found the negligent homicide instruction was not supported by the evidence, the court in Campbell discussed the applicable harmless error analysis to be used when such an instruction is indicated by the evidence but not given. The court found as follows:
The court's failure to instruct on negligent homicide is prejudicial to the defendant only if the jury has insufficient information to understand that if he was guilty of only negligent homicide, it should find him not guilty of the charged offense.
Id. at p. 14, 1069.
Our review of the record indicates that, even if we were to conclude that the trial court should have instructed the jury as to possession of drug paraphernalia, which we have not, the exclusion of any such instruction would have been harmless. We conclude that the jury was adequately instructed as to the State's burden with regard to possession of cocaine. Although the trial court did not instruct the jury at all regarding drug paraphernalia in the present case, it did instruct the jury, "If the State has failed to prove beyond a reasonable doubt that defendant is guilty of either the offense charged or of the lesser responsive offense, your verdict should be `Not Guilty.'" In his closing argument, defense counsel argued repeatedly to the jury that the defendant's actions constituted possession of drug paraphernalia rather than possession of cocaine, and that possession of drug paraphernalia was the appropriate charge. Defense counsel also pleaded with the jury to let the defendant face the drug paraphernalia charge. In response, the State stated it could no longer charge the defendant with possession of drug paraphernalia. Finally, defense counsel asked the jury to find the defendant not guilty of the offense charged. As we find that the jury was adequately instructed as to the charged offense and the State's burden regarding that charge, we conclude that the trial court did not err in denying to provide the definition of possession of drug paraphernalia to the jury.

Motions Related to the Habitual Offender Charge
In these assignments, addressed in the defendant's July 28, 1997 pro se brief, the defendant alleges error regarding Judge Minaldi's denial of a pro se Motion to Suppress he filed after his adjudication as a habitual offender. In the motion, he requested suppression of the Presentence Investigation Report and the report of his Probation and Parole Officer for various reasons. Although a PSI was not introduced at the habitual offender hearing, the defendant's Probation and Parole Officer did testify. The defendant alleges he was prejudiced by Judge Minaldi's denial of the motion since she was not the trial judge and because it precluded him from reurging the motion at his sentencing.
We find no error here as the motion was untimely filed and the defendant does not *13 assert in what way he was prejudiced by the fact that Judge Minaldi ruled on the motion rather than the trial judge. Neither does the record indicate that defense counsel made an attempt to reurge the motion at the defendant's sentencing.
The defendant also alleges the Presentence Investigation Report and testimony of his Probation and Parole Officer, Patricia King, should not have been used at his habitual offender hearing. Although he claims that his attorney moved to suppress this information at the habitual offender hearing, we do not find such a motion in the record. Further, the defendant claims he and his attorney were not given proper notice of the habitual offender hearing, they were not given a copy of the PSI report from the parole officer and no pre-trial briefs were filed. In his Motion to Suppress, the defendant cites federal authority for the proposition that various time limitations were not met with respect to notice of the hearing, notice of the PSI, and period for filing objections. Judge Minaldi denied the Motion to Suppress, finding that the defendant cited federal authority when the state rules of criminal procedure apply. Judge Minaldi also found the motion should have been filed prior to the hearing.
We find no error in denial of the Motion to Suppress as none of the grounds raised in the motion were raised by either the defendant or his attorney prior to the habitual offender hearing. Furthermore, the defendant has not shown how he was prejudiced by this denial. He does not state what evidence would have been introduced had he been given the notice he claims he was not given. Also, no Presentence Investigation Report was ordered and no objection was made to the probation officer's testimony at the habitual offender hearing. The probation officer was cross-examined by defense counsel.
The defendant further claims that the habitual offender bill was not in proper posture for placing on the trial docket and was filed untimely. Again, these objections were not raised by defense counsel or the defendant at the habitual offender hearing. Furthermore, the defendant does not state how the habitual offender bill lacked proper posture.

Assignments from August 1, 1997 Pro Se Brief
We initially note that a variety of the assertions made in this brief have been previously addressed in this opinion and will not, therefore, be discussed once again. However, the defendant also alleges that various rules of court were not followed. He names Rule 9, 12 and 18. In citing these rules, the defendant again alleges he was not given timely notice of the habitual offender hearing and the habitual offender bill was not in proper posture. These assignments are meritless.
We also note that the defendant seems to be under the mistaken belief that the trial court postponed sentencing the defendant immediately after the habitual offender hearing in order for defense counsel to file a motion to suppress. However, the record indicates the trial court postponed sentencing in order for defense counsel to file a written motion for new trial.
Finally, the defendant claims he filed a Motion to Consolidate Cases, which was denied by Judge Minaldi. This motion was denied by Judge Minaldi because it would cause confusion at trial and because it should be submitted by the defendant's attorney. The defendant further claims Judge Gray granted his motion for supervisory writs, but Judge Planchard did not consider the defendant's motion. In the motion, the defendant apparently wanted a civil suit he had pending against the 19th Judicial District Court to be consolidated with his civil suit pending against the 14th Judicial District Court. Accordingly, this argument is not relevant to the present case.

DECREE
For the foregoing reasons, the conviction and sentence of the defendant, Clarence Lewis, are affirmed. This matter is remanded to the trial court to amend the commitment and the minute entry of the sentence to reflect that the defendant is given credit for time served.
*14 AFFIRMED, AMENDED, AND REMANDED WITH INSTRUCTIONS.
NOTES
[1] Defense counsel alleges, but does not raise as an error, that the trial court did not rule upon his Motion for Judgment Notwithstanding the Verdict, also referred to at trial as a Motion to Arrest Judgment. However, the transcript indicates that, at the time the motion was made, the trial court felt that only issues for appeal had been raised and, further, that none of the grounds for arresting judgment were present. Accordingly, this motion was denied at that time. Following this denial, counsel for the defendant stated that he actually wanted to file a Motion for New Trial. Pursuant to this request, the trial court postponed sentencing in order for defense counsel to file a written motion for new trial. This motion was filed on July 11, 1997, and was subsequently denied by the trial court on July 15, 1997.
[2] The defendant has filed several writ applications with this court involving this offense. All but one were dismissed without reaching the merits. In State v. Lewis, an unpublished writ bearing docket number 97-632 (La.App. 3 Cir. 8/19/97), this court denied the defendant's writ, finding his claims were either meritless or rendered moot by his May 29, 1997 conviction. In his application, the defendant claimed his trial was not timely instituted, he was not timely indicted, he was not timely arraigned, and his statutory right to a speedy trial had been violated. None of those claims have been raised in his appeal.
[3] We note that this issue has also been raised by the defendant as an assignment or error.
[4] By letter dated January 12, 1998, this court granted the defendant until February 3, 1998 to file another pro se brief.
[5] These arguments are taken from the defendant's June 11, 1997 brief. In Assignment of Error No. 1, the defendant poses the question, "Did the prosecutor, knowingly misappropriate the indictment to force the jury in rendering a verdict not correct to its proper charge, knowing the jury had to render a verdict, even though the defense proved the proper charge for the indictment?" In Assignment of Error No. 2, the defendant asks: "Was the prosecution of defendant formulated to produce a forced verdict from jury, May 29, 1997, by the joining of both indictments. A. Misdemeanor [sic] and B. A felony? Is there collusion in action here? Or coercion?" Finally, in Assignment of Error No. 4, the defendant asks, "Was the jury coerced; was there a miscarriage of justice in the trial of Clarence D. Lewis, plaintiff in other civil suits against the State?"