JjTHIBODEAUX, J.,
dissenting.
The majority’s rebanee on Whren v. United States, 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996), State v. Lopez, 02-0562 (La.10/30/00), 772 So.2d 90, and State v. Kalie, 96-2650 (La.9/19/97), 669 So.2d 879 is misplaced. In Whren, Lopez, and Kalie, the officers pulled over the defendants almost immediately after they committed the traffic violations. In this case, the defendant was not pulled over until much later and after he had traveled approximately 28 miles into another parish. Neither Trooper Bergeron nor Trooper Trahan decided initially to pull over the driver of the Crown Victoria for a traffic violation. According to his testimony, Trooper Bergeron decided to later pursue the Crown Victoria only after he learned that the owner of the Crown Victoria was a passenger in the Suburban that was pulled over, and that the Crown Victoria had not been pulled over.
As the trial court observed and the majority aptly noted but mistakenly interpreted:
Given the totality of the circumstances, it is apparent that it was not any traffic violation, which caused the Crown Victoria to be stopped in Iberville Parish. Information obtained via police radio between the troopers prompted Trooper Bergeron to again pursue the Crown Victoria. | ¡.Trooper Bergeron’s conduct initiated [sic] that he pursued defendant Morris, apparently for the sole purpose of discovering possible criminal activity. Such actions were pretexual [sic]. Based upon the information provided to the Court, Trooper Trahan and Trooper Bergeron had no intentions of pursuing the Crown Victoria for the traffic violation committed in St. Martin Parish. Trooper Bergeron’s actions were prompted by information received from Trooper Trahan, which resulted from the stop of the Suburban. Therefore, the Court concludes that the motivation or primary purpose underlying the stop of the Crown Victoria was Trooper Bergeron’s knowledge that the driver of the Crown Victoria and the occupants of the Suburban were in some way connected to one another, not because of any criminal conduct on the part of the occupants- of either vehicle. Therefore, this Court finds that the stop of the Crown Victoria was pretextual and without reasonable or probable cause.
Due to a totality of the circumstances, the Court finds that the stop of the Crown Victoria was unreasonable, with *999 out cause, and therefore, violative of the Fourth and Fourteenth Amendments to the United States Constitution and Article 1 sections 2 and 5 of the Constitution of Louisiana.
The trial court found that the trooper pursued the Crown Victoria “apparently for the sole purpose of discovering possible criminal activity” and not for any traffic violation. The court later stated that the Crown Victoria was not stopped for any traffic violation. However, it also stated: “Based upon the information provided to the Court, Trooper Trahan and Trooper Bergeron had no intentions of pursuing the Crown Victoria for the traffic violation committed in St. Martin Parish.” In the last sentence of its ruling, the court stated that based on the totality of the circumstances, the stop of the Crown Victoria was without cause. I agree.
The majority also errs when it finds a valid Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) stop. The majority concludes that: “[t]he Louisiana Supreme Court has recognized the validity of what we might call an educated hunch, which officers with significant experience and training are able to utilize while working in the field.” | aTo the contrary, our jurisprudence has never recognized a “hunch,” educated or otherwise. The reasonable suspicion standard under La.Code Crim.P. art. 215.1 is something less than probable cause and something more than a hunch. State v. Flowers, 441 So.2d 707 (La.1983), cert. denied, 466 U.S. 945, 104 S.Ct. 1931 (1984). While the reasonable suspicion is not a very burdensome one, that standard has now been further diluted by the majority to an “educated hunch.” Essentially, the majority has disemboweled a very specific codal standard articulated in La.Code Crim.P. art. 215.1. This “educated hunch” now articulated by the majority is the first time a court has ever required such a loose standard. As the United States Supreme Court explained in United States v. Sokolow, 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1:
The officer ... must be able to articulate something more than an ‘inchoate and unparticularize suspicion or hunch’.... The Fourth Amendment requires ‘some minimal level of objective justification’ for making the stop. (Citations omitted).
The most important inquiry in assessing the validity of an investigatory stop pursuant to La.Code Crim.P. art. 215.1 is the officer’s knowledge at the time of the stop. State v. Williams, 421 So.2d 874 (La.1982). In the present case, the State contends Trooper Bergeron had reasonable suspicion to make a Terry stop because Defendant Morris was driving a vehicle registered to a passenger in the Suburban, the vehicles were traveling together late at night, and the Suburban committed an apparently deliberate traffic offense. However, Trooper Bergeron did not have all of this information at the time he stopped the Crown Victoria. Trooper Bergeron did not testify that he had knowledge that the Suburban driver deliberately committed a traffic offense. Trooper Trahan testified that he did not advise Trooper Bergeron over the radio about the illegal lane change by the Suburban. Therefore, at the time Trooper Bergeron stopped the Crown Victoria, the testimony reveals that he knew only that a | ¿passenger in the Suburban was the registered owner of the Crown Victoria and that they had been seen traveling in the vicinity of each other. He testified that in his experience the owner of a drug courier vehicle will often travel nearby and try to get the police to pull them over instead. This case is distinguishable from State v. Johnson, 02-2081 (La.4/26/02), 815 So.2d 809 and United States v. Arvizu, 534 U.S. 266, 122 S.Ct. *1000 744, 151 L.Ed.2d 740 (2002) discussed by the majority. In this case there was very little to factor into a “totality of the circumstances” test. In addition, there is no evidence that the driver of the Crown Victoria made any effort to evade the troopers or that the vehicle was traveling in a high-crime area. Further, there was no evidence Trooper Bergeron had any information linking the defendants to drug trafficking. Trooper Bergeron testified that he did not know if Trooper Trahan had requested a criminal history check on the occupants of the Suburban. Therefore, the criminal histories should not be considered as part of the totality of the circumstances. I have been unable to discover a case where a court has held that two vehicles traveling together late at night is conduct peculiarly associated with drug trafficking, and that such conduct could form the basis of reasonable suspicion for a Terry stop. The facts in this case combined with the resulting inferences and the officers’ experience do not give rise to reasonable suspicion. Without more, the State failed to prove that the stop of the Crown Victoria was based on reasonable suspicion of criminal activity.
In its written reasons for ruling, the trial court found that Trooper Bergeron’s knowledge that the occupants of both vehicles were somehow connected to each other, without any criminal conduct by any of the occupants of either vehicle, was insufficient for reasonable suspicion. In State v. Thomas, 2002-0471 (La.App. 3 Cir. 10/30/02); 829 So.2d 1137, writ denied, 2002-2920 (La.4/21/03); 841 So.2d 789, this court stated:
LWhen reviewing a trial court’s denial of a motion to suppress, the appellate court looks at the totality of the evidence presented at the suppression hearing. State v. Bargeman, 98-617 (La.App. 3 Cir. 10/28/98); 721 So.2d 964, writ denied, 99-0033 (La.5/28/99); 743 So.2d 658. Unless the trial court’s conclusions are not supported by the evidence or there exists a clear abuse of discretion, an appellate court should not overturn the trial court’s ruling. State v. Purvis, 96-787 (La.App. 3 Cir. 12/11/96); 684 So.2d 567 (citing State v. Burkhalter, 428 So.2d 449 (La.1983)). In other words, the appellate court will give the trial court’s determination great weight and will not set aside the trial court’s ruling unless clearly mandated by a preponderance of the evidence. State v. Lewis, 97-1244 (La.App. 3 Cir. 3/6/98); 728 So.2d 1.
Id. at 1139-1140.
The trial court did not abuse its discretion in granting the motions to suppress based on the Terry stop. The majority errs and, in so doing, does inestimable violence to established jurisprudential standard and eviscerates the precepts supporting Article 1, Sections 2 and 5 of the Louisiana Constitution and the Fourth and Fourteenth Amendments to the United States Constitution.